REYNALDO RAMOS ET AL. *v.* BENITO
RAMOS, JR., ET AL.
(AC 23455)

Lavery, C. J., and West and Cretella, Js.

Argued September 15—officially released November 25, 2003

*William J. Melley III*, for the appellants (defendants).

*Hugh D. Hughes,* with whom, on the brief, were *William F. Gallagher* and *Brian M. Flood,* for the appellee (plaintiff Wilson Ramirez).

*Opinion*

CRETELLA, J. The defendant Benito Ramos, Jr., appeals from the judgment of the trial court, rendered after the jury's award of $23,475.45 on its verdict in favor of the plaintiff Wilson Ramirez for damages resulting from an automobile accident.[1] The defendant claims that the court abused its discretion in (1) excluding evidence that the plaintiff had been diagnosed with hepatitis B prior to the accident and (2) in denying the defendant's motion for a continuance following the late disclosure of the plaintiff's medical condition. Because we find that the court abused its discretion in both excluding evidence of the plaintiff's hepatitis B and in denying the defendant's motion for a continuance, we

---

[1] Reynaldo Ramos, the driver of the vehicle that was occupied by Ramirez, originally was a plaintiff, but settled his claim during jury selection and thereafter withdrew the action. We therefore refer in this opinion to Ramirez as the plaintiff. Although Reynaldo Ramos and Benito Ramos, Jr., share the same surname, they are not related. The estate of Benito Ramos, Sr., also was named in the complaint as a defendant. The jury returned its verdict against Benito Ramos, Jr., only. We therefore refer in this opinion to Benito Ramos, Jr., as the defendant.

reverse the judgment and remand the case for a new hearing in damages.

The following facts are relevant to the defendant's appeal. The plaintiff was a backseat passenger in a motor vehicle that was struck in the right rear and side by a motor vehicle driven by the defendant.[2] Officer Francis J. Monahan of the Waterbury police department testified at trial that the damage to both vehicles was minor and that none of the parties involved in the accident appeared to be injured or requested to go to a hospital. The plaintiff testified that he had experienced some pain at the time of the accident, but ignored it. A short time later, the plaintiff testified, he began to complain of pain in his back and neck, and of numbness in his hands.

In an amended complaint, the plaintiff sought damages for the following injuries: "Strain/sprain of his cervical spine . . . . Strain/sprain of his right shoulder . . . . Strain/sprain of his lumbosacral spine . . . . Pain and suffering, both mental and physical." In addition, the plaintiff sought damages to compensate him for medical care, medicines and therapy, future medical expenses, lost earnings due to time taken from work, and compensation for being rendered "unable to participate in and enjoy his usual activities."

The plaintiff was treated by Robert Costanzo, a chiropractor, for approximately four to five months. The plaintiff testified that he later received physical therapy from Brian Peck, a physician, approximately one year after the accident. Peck's records revealed that the plaintiff had a ten year history of "suprapubic pain" that worsened when he had sexual intercourse, and

---

[2] Benito Ramos, Sr., who owned the automobile that was driven by the defendant, was not in the car at the time of the accident. Ramos, Sr., died after the accident and, prior to trial, Anthony Santoro was appointed the administrator of the Ramos, Sr., estate.

radiated to the thigh and around to the right flank and back, and that he had a history of prostatitis and had suffered a gunshot wound to his left chest in 1992, for which he had received a blood transfusion. The records also revealed that the plaintiff had sustained a serious head injury in a car accident seventeen years earlier, and although he denied illicit drug use, the medical records noted the presence of hepatitis B surface antibody, hepatitis B core antibody and antibody to hepatitis A in his blood. The records stated that the plaintiff was not infectious and had no risk of active disease. Although the defendant's counsel had subpoenaed those records to court for the first day of trial, Peck's office mistakenly faxed the records to the defendant's counsel instead.

Immediately preceding trial, the plaintiff sought to preclude the admission of the hepatitis information for lack of probative value. After a hearing outside the presence of the jury, the court ordered that all hepatitis references be redacted from Peck's records and ordered that the defendant not inquire about the plaintiff's hepatitis during cross-examination. The court found that such evidence was more prejudicial than probative. The court later articulated its reasoning for finding the illness to be prejudicial, stating: "I agree that . . . [the plaintiff's] health is at issue here, and his ability to enjoy his life, which is an allegation in the complaint, is certainly impacted by his health. My problem is . . . the prejudicial effect of having a sexually transmitted disease out before the jury, unless there's really some specific reference in the medical records that it does affect his daily life." The court ruled that it would not admit evidence of the plaintiff's hepatitis without some expert testimony regarding its effect on the plaintiff's life expectancy.

In his motion for a continuance, the defendant argued that because the contents of Peck's records were

revealed less than twenty-four hours before trial and the basis of the court's ruling was the lack of expert testimony, additional time was needed to find such an expert. In denying the motion for a continuance, the court stated that there never had been a need to disclose the hepatitis condition because it was not related to the injuries claimed by the plaintiff. The court also stated that the evidence was excluded because it was prejudicial. Following the defendant's cross-examination of the plaintiff, the defendant again objected to the court's ruling on the exclusion of the hepatitis evidence and made another motion for a continuance,[3] which the court also denied.

On appeal, the defendant claims that the court abused its discretion by excluding evidence of the plaintiff's hepatitis on the basis of its prejudicial effect. Although the court properly weighed the probative value of the evidence against its propensity for prejudice, we conclude that under these facts, the court abused its discretion. The defendant also claims that the court abused its discretion by denying his request for a continuance to determine the impact of hepatitis on the plaintiff's health. We agree. Because those issues are closely related, we will address them together.

"The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion. . . . The trial court also has broad discretion in balancing the probative value of proffered evidence against its

---

[3] The defendant's counsel stated: "I would have asked the witness questions regarding the effect of the hepatitis on his lifestyle . . . and the impact that this had on his basic enjoyment of life, and what his perception is of his prognosis. These are things that all relate to the condition that I didn't know about until just over twenty-four hours ago. . . . [W]hat I also would like to do . . . is have an extension of time to continue the trial to get the expert evidence on that because I think it is . . . necessary for a complete understanding by the jury of the issues."

prejudicial effect." (Internal quotation marks omitted.) *Olkowski* v. *Dew*, 48 Conn. App. 864, 871, 713 A.2d 264, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998). This court has recognized that "[e]vidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial. To be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Citation omitted; emphasis in original.) *Chouinard* v. *Marjani*, 21 Conn. App. 572, 576, 575 A.2d 238 (1990).

In excluding the hepatitis evidence, the court stated that because of "the pretty common knowledge of the sources of the disease," the revelation of the hepatitis would be highly prejudicial to the defendant. The fact that a particular disease can be transmitted sexually or via intravenous drug use does not render evidence inherently prejudicial because that evidence shows that an individual has contracted the disease. See, e.g., *State* v. *Mercer*, 208 Conn. 52, 62, 544 A.2d 611 (1988) (revelation during jury selection that defendant had AIDS did not prejudice his case or deprive him of fair trial when no evidence of actual juror bias shown).[4]

In determining whether evidence should be admitted, the primary inquiry is whether it is relevant to a material issue in the case. "While there is no precise test for relevancy, evidence is admissible if it tends to establish a fact in issue . . . ." (Citation omitted.) *Chouinard* v.

---

[4] In *Mercer*, our Supreme Court described the voir dire of the jurors as follows: "Several volunteered that they believed that the issue was wholly irrelevant to the question of the defendant's guilt. One juror expressed sympathy toward the defendant. . . . The remaining jurors stated that the defendant's condition would not affect their judgment and that they were not concerned for their own health. The record thus discloses no evidence that the jurors who sat on the defendant's case were prejudiced by the knowledge that he supposedly suffered from AIDS." *State* v. *Mercer*, supra, 208 Conn. 62.

*Marjani*, supra, 21 Conn. App. 575. The evidence at issue here, namely, that the plaintiff at some time had been infected with hepatitis B, was relevant to a fair determination of his damages. The plaintiff put his state of health into issue by seeking compensation for being unable to partake in his "usual activities." The plaintiff's medical history prior to the accident was highly probative and necessarily had to be disclosed so that the jury could determine accurately how his life and health may have been affected by the defendant's conduct. See *Donoghue* v. *Smith*, 114 Conn. 64, 66, 157 A. 415 (1931) (life expectancy may be determined by "evidence such as the age, health, habits and physical condition of the plaintiff"); *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 715, 596 A.2d 1318 (instruction regarding life expectancy upheld because jury not prevented from considering evidence of plaintiff's health problems that could have shortened his life span), cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). The trier of fact must properly determine what impact, if any, the plaintiff's medical history has on the overall award of damages.[5]

The court excluded evidence of the plaintiff's hepatitis even though there was nothing in his medical records suggesting the manner in which the plaintiff had contracted the disease, nor was there any reason to surmise that the jury would have been unable to render a fair decision if provided with that knowledge. "When the evidence is relevant and the likelihood of prejudice is not great, deviation from the general rule of admissibility is not warranted and discretion has been abused if the evidence is excluded." *Martins* v. *Connecticut*

---

[5] The relevance of the plaintiff's health on the jury's determination of damages was highlighted by the court's charge to the jury, which stated in relevant part: "You will also consider the particular condition of strength, health and physical stamina of this particular plaintiff as bearing upon the probable duration of his life, whether longer or shorter than the average for a person of his age, as given in the expectancy table."

*Light & Power Co.,* 35 Conn. App. 212, 221, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994).

Although the court essentially placed a burden on the defendant to show that the hepatitis evidence was probative, the defendant was afforded no opportunity to establish that because he had learned of the plaintiff's hepatitis diagnosis only the day before trial. Moreover, the burden properly should have been placed on the plaintiff to show that the evidence was prejudicial rather than on the defendant to evince its probative value. See *Hayes* v. *Manchester Memorial Hospital,* 38 Conn. App. 471, 475, 661 A.2d 123 ("burden of showing that the evidence may unduly arouse the jurors' emotions of hostility or sympathy rests with the party claiming prejudice"), cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995).

Even if the court found possible danger of prejudice, it could have taken steps to minimize the effect rather than abrogating the scope of the defendant's cross-examination. The court could have limited the defendant's examination of the plaintiff to reduce any negative inferences, required the defendant to voir dire the plaintiff outside the presence of the jury to better determine the probative value of his testimony or given a limiting instruction to the jury explaining exactly how the evidence could be used. In *Richmond* v. *Longo,* 27 Conn. App. 30, 40, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992), we held that the court abused its discretion in limiting the scope of the defendant's cross-examination of the plaintiff's expert witness, stating that it should have permitted the defendant to voir dire the witness outside the presence of the jury and concluding that its "refusal to permit such cross-examination without having full knowledge of what such cross-examination might elicit was improper." We reversed the judgment and remanded the case for a new trial because: "When a party has not been permitted

fair and full cross-examination of a witness upon the subjects of his examination in chief . . . [the] denial of this right is . . . prejudicial and requires reversal by this court." (Internal quotation marks omitted.) Id.

"[T]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . Therefore, on appeal, we . . . must determine whether the trial court's decision denying the request for a continuance was arbitrary or unreasonabl[e]." (Citations omitted; internal quotation marks omitted.) *State* v. *Delgado*, 261 Conn. 708, 711 805 A.2d 705 (2002). "Every reasonable presumption must be made in favor of the proper exercise of the trial court's discretion." *State* v. *Wallace*, 181 Conn. 237, 240, 435 A.2d 20 (1980). To show that the court abused its discretion in denying the motion for a continuance, the defendant must demonstrate that (1) the court acted arbitrarily and (2) the denial prejudiced his ability to present a defense. See *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 52, 634 A.2d 870 (1993).

In denying the defendant's motion for a continuance, the court reasoned that the defendant had had an opportunity to question the plaintiff about his health and medical conditions during the plaintiff's deposition. Although that was true, it is unreasonable that the failure to learn of a potentially relevant fact during discovery precludes a continuance when the fact is revealed shortly before or at the time of trial. One reason for granting a continuance is to "minimize the possibly prejudicial effect of a late disclosure . . . ." *Rullo* v. *General Motors Corp.*, 208 Conn. 74, 79, 543 A.2d 279 (1988). The defendant had no reason to suspect that the plaintiff had hepatitis, and, therefore, would not have specifically questioned him about it during the deposition.

The court also noted that there was no duty on the plaintiff's part to disclose his hepatitis infection because it was not related to the injuries he claimed to have sustained in the accident. When a plaintiff makes a claim for damages on the basis of his inability to participate in his usual activities, any medical condition that has any potential bearing on his health prior to the accident should be disclosed. That is especially true in the present case, where the defendant conceded negligence, leaving only the issue of damages before the jury. The court did not have a reasonable basis to deny the defendant's request for a continuance. We conclude, therefore, that the court acted arbitrarily and abused its discretion in denying the motion for a continuance.

We must now determine whether the court's abuse of discretion was harmful to the defendant. As we have stated, the court sought arguments from the defendant as to the probative value of the hepatitis evidence, denied the defendant additional time to comply with that request and then excluded the evidence as prejudicial. Although it is speculative as to whether the defendant would have uncovered anything concerning the impact of hepatitis on the plaintiff's life, he was never given the chance to make such a discovery. If the defendant had obtained a continuance, he would have had an opportunity to investigate the impact of the hepatitis on the plaintiff, as well as to consult with experts on that issue. Therefore, if the defendant had been given the opportunity to produce evidence that hepatitis had impaired the plaintiff in the past or would continue to plague him in the future, such evidence may have had an impact on the amount of the plaintiff's damages. We find that the defendant's defense was prejudiced by the court's abuse of discretion.

The judgment is reversed in part and the case is remanded for a new hearing in damages.

In this opinion the other judges concurred.