PAULA MILARDO *v.* JESSICA KOWALESKI ET AL.
(AC 27503)

DiPentima, Gruendel and Hennessy, Js.

Argued February 21—officially released June 19, 2007

*Louis W. Flynn, Jr.*, with whom was *W. Anthony Stevens, Jr.*, for the appellant (plaintiff).

*Louise C. LaMontagne*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. On January 18, 2003, an automobile accident occurred between the respective vehicles of the plaintiff, Paula Milardo, and defendant Jessica Kowaleski. Litigation followed, which resulted in a jury verdict in favor of the defendants, Kowaleski and Ford Motor Credit Company. On appeal, the plaintiff contends that the trial court abused its discretion in denying her motion to set aside the verdict. In addition, she raises multiple claims concerning the admission of the

expert testimony of Anthony G. Alessi, a neurologist. We affirm the judgment of the trial court.

The following facts are undisputed. On January 18, 2003, the plaintiff was a passenger in a Chevrolet Tahoe sport-utility vehicle operated by her daughter, Angela Tigner. As that vehicle stopped for oncoming traffic on the exit thirteen ramp onto Route 9 in Middletown, it was struck from behind by a Lincoln LS sedan operated by Kowaleski. An ambulance subsequently transported the plaintiff to Middlesex Memorial Hospital (hospital). The medical record prepared by the hospital, introduced as an exhibit at trial, noted that the plaintiff complained of "neck and back pain." It also indicated that the plaintiff represented that she had "no previous injury to her neck or back." An X ray of the plaintiff's cervical spine and lumbar spine revealed no fracture. Accordingly, she was diagnosed with "acute neck and lumbar strain" and was discharged that day.

A civil action followed. By complaint dated December 8, 2003, the plaintiff alleged that Kowaleski negligently caused the January 18, 2003 accident, which in turn caused the plaintiff to suffer physical injury, pain and anguish. A trial was held over the course of four days, at the conclusion of which the jury found in favor of the defendants. The plaintiff thereafter filed a motion to set aside the verdict. By memorandum of decision dated February 15, 2006, the court denied that motion and rendered judgment accordingly. From that judgment, the plaintiff now appeals. Additional facts will be set forth as necessary.

I

The plaintiff contends that the court abused its discretion in denying her motion to set aside the verdict. A review of the evidence presented at trial convinces us that her claim is without merit.

"The proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Citation omitted; internal quotation marks omitted.) *State* v. *Sunila*, 98 Conn. App. 847, 850, 911 A.2d 773 (2006). "Our standard of review . . . requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony." (Internal quotation marks omitted.) *Mokonnen* v. *Pro Park, Inc.*, 96 Conn. App. 625, 631, 901 A.2d 725, cert. denied, 280 Conn. 924, 908 A.2d 1088 (2006).

Notably, the defendants at trial conceded negligence on the part of Kowaleski in the operation of her vehicle. At the same time, they steadfastly maintained that her negligence did not cause the plaintiff's injuries. The jury agreed, returning a verdict in favor of the defendants. On appeal, the plaintiff argues that there exists "no evidence to support the verdict."

Following physical and X ray examination at the hospital, the plaintiff was diagnosed with an acute neck and shoulder sprain. At trial, the plaintiff detailed the pain she experienced after the accident. She testified that the pain was constant and described it as a "sharp" and "burning" pain that "feels like somebody is actually pulling on you." She further stated that the pain "starts

in the . . . end of the skull all the way down here to my shoulder and it goes down into my shoulder blade and it goes into my armpit through . . . my heart and it goes up in my neck-shoulder area and then it goes into my left three fingers."

The plaintiff offered the following evidence of causation. First, she testified that the January 18, 2003 accident caused her neck and shoulder sprain. She introduced into evidence the hospital's medical record of her January 18, 2003 visit, which contained the following "discharge impression: acute neck and lumbar strain, secondary to motor vehicle accident." She also introduced into evidence the notes of her family physician, Adam Perrin, which likewise contained a statement indicating that the plaintiff was involved in a car accident and now complained of neck and back pain. The plaintiff produced expert testimony from neurologist Edward Tucker[1] that she suffered an injury to her T1 nerve root on the left side that was proximately caused by the January 18, 2003 accident. Tucker further opined that the plaintiff had a 37 percent permanent partial disability of her left upper extremity. The plaintiff also introduced into evidence the medical report of neurosurgeon Ahmed Khan. That report stated in relevant part: "[The plaintiff] is a 54 year old female referred to us by Dr. Tucker for left arm pain. January 18, 2003, she was a seat belted passenger when [the] vehicle she was riding in was rear-ended. She developed pain in the left side of her neck, into the left armpit, and ulnar aspect of left arm." On the basis of that evidence, the plaintiff now argues that the jury was compelled to conclude that the January 18, 2003 accident caused her injuries. We disagree.

The defendants presented the following evidence to the jury. Although the plaintiff informed the hospital

---

[1] As the court noted in its memorandum of decision, Tucker was not a board certified neurologist.

on January 18, 2003, that she had "no previous injury to her neck or back," the plaintiff conceded during cross-examination that she suffered a neck injury at the Bonanza Steakhouse in Middletown several years earlier. In her response to the defendants' request for answers to interrogatories, the plaintiff averred that she suffered a pinched nerve in her neck that required a cortisone shot and that she subsequently filed a claim against Bonanza Steakhouse. The plaintiff also acknowledged that she had been taking the pain medication codeine for the past twenty-eight years.

The defendants offered the expert testimony of Alessi, who performed an independent medical examination of the plaintiff on October 18, 2005. In his report, which was introduced as an exhibit at trial, Alessi opined that "[b]ased on my clinical evaluation . . . I believe that she is suffering from a left ulnar mononeuropathy, well localized to the left elbow. . . . I did not see any evidence to suggest a T1 radiculopathy. I believe that the cyst present on the [magnetic resonance imaging] scans is unrelated to the motor vehicle accident and is stable. I also do not have any specific evidence that the ulnar neuropathy is directly related to this motor vehicle accident." Alessi also disputed Tucker's assertion that the plaintiff suffered a 37 percent permanent partial disability of her left upper extremity. He stated: "I have reviewed the guides to the evaluation of permanent impairment, page 492, Table 16-15. This is the same table used by Dr. Tucker. . . . If there is any motor impairment, I believe that it is minor and I would not assign more than 5 [percent] in this regard bringing the total impairment to 8.5 [percent] of the left upper extremity. Again, I did not find any evidence to suggest that this injury is related to the motor vehicle accident. I am additionally concerned by the fact that [the plaintiff] has continued to use twelve tablets per

day of Tylenol with codeine, which is a narcotic analgesic."

Moreover, as the court stated in its memorandum of decision, "[t]he defendants' expert witness . . . a board certified neurologist, testified that when he was performing his examination of the plaintiff, her husband coached her on two occasions. The plaintiff's husband put his finger to his lips while the plaintiff was answering one of Dr. Alessi's questions, and the plaintiff immediately stopped talking. The plaintiff's husband held up his hand on another occasion during the examination. Again, the plaintiff immediately stopped answering the doctor's question."

Furthermore, the jury was presented with photographs of the two vehicles involved in the accident. Those photographs indicate that the collision caused no visible damage to the plaintiff's vehicle; the front bumper cover on Kowaleski's vehicle was damaged. Perhaps most significantly, the jury heard Kowaleski's testimony that her vehicle was traveling "less than five miles per hour" when it struck Tigner's sport-utility vehicle.

In light of the foregoing, the jury reasonably could have found that the plaintiff failed to demonstrate that the January 18, 2003 accident caused her injuries. Although the plaintiff presented expert testimony as to the cause of her injuries, the defendant offered expert testimony that rebutted the conclusions contained therein. It is well established that "[i]n finding facts in cases of conflicting expert testimony, a jury may choose to believe one expert over another." *State* v. *Gray*, 221 Conn. 713, 720, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). The jury, thus, was free to credit Alessi's expert opinion that there was no evidence that the plaintiff's injuries were related to the January 18, 2003 accident. The jury likewise was

free to disbelieve the plaintiff's testimony. See, e.g., *State* v. *Smith*, 99 Conn. App. 116, 136, 912 A.2d 1080 (whether testimony believable is question solely for jury), cert. denied, 281 Conn. 917, 917 A.2d 1000 (2007). Considering the evidence in the light most favorable to the defendants, we conclude that the court did not abuse its discretion in denying the motion to set aside the verdict.

## II

The plaintiff raises multiple claims concerning the admission of Alessi's expert testimony. We review each under the abuse of discretion standard. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 514–15, 853 A.2d 460 (2004). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 274, 819 A.2d 773 (2003). An abuse of discretion leading to reversal of the judgment is rare. *Segale* v. *O'Connor*, 91 Conn. App. 674, 677, 881 A.2d 1048 (2005).

## A

The plaintiff claims that the court abused its discretion in admitting Alessi's testimony. The following facts are pertinent to that claim.

The plaintiff first disclosed her expert witnesses to the defendants on April 25, 2005.[2] On May 12, 2005, the

---

[2] The plaintiff disclosed Tucker, Perrin, Khan and Mary E. Powell, a physician, as potential expert witnesses.

plaintiff filed a supplemental disclosure of Tucker as an expert witness that indicated both that the plaintiff had a 37 percent permanent partial disability of her left upper extremity and that the disability "can be ascribed to the accident which is the subject of this litigation." In response, the defendants filed a motion for a continuance in which they stated: "(1) This case is scheduled to start jury selection on June 1, 2005. (2) Until May 10, 2005, the [p]laintiff had no permanency rating whatsoever. (3) Until May 10, 2005, the extent of the [p]laintiff's medical bills were thought to be approximately $3,000.00. Plaintiff's counsel now represents that they are in the neighborhood of $10,000.00. (4) Under the cover letter of May 10, 2005, was Dr. Tucker's report dated May 5, 2005 assessing a 37 [percent] permanent partial disability rating to [p]laintiff's left upper extremity." The defendants thus requested a continuance of "at least [ninety] days to evaluate the new and unanticipated information, depose medical treaters and arrange for an [independent medical examination]." The court granted the motion and continued the matter until September 13, 2005. The plaintiff thereafter filed a motion for a continuance due to Tucker's complicated schedule. As she represented to the court, "Tucker is currently dividing his time between a home in France where his children and wife reside and his practice in Essex." The court again granted the motion and continued the matter to November 8, 2005, when jury selection would commence.

Following the disclosure of Tucker's report in May, the defendants sought to have the plaintiff examined by an independent medical examiner. During the following months, the defendants proposed six different physicians, all of whom the plaintiff found unacceptable. As counsel for the plaintiff explained at a November 10, 2005 hearing: "[W]e had some arguments . . . . I [rejected two physicians] on good faith based upon the

fact that I don't think [they would conduct] independent medical examinations. It's a biased medical examination in favor of the defendants because that's what they do." Instead, the plaintiff provided the defendants with a list of ten physicians whom she considered acceptable. Included on that list was Alessi. The defendants contacted Alessi and scheduled a medical examination with the plaintiff, which was performed on October 18, 2005.[3] Alessi completed his report and provided it to the defendants on November 1, 2005. On November 3, 2005, the defendants sent a copy of that report to the plaintiff; they filed with the court a disclosure of Alessi as an expert witness on November 7, 2005. The plaintiff filed a motion in limine to preclude Alessi's testimony on November 10, 2005, on which the court conducted a hearing that day.

At the hearing, counsel for the plaintiff explained that he received the disclosure on the eve of jury selection. He continued: "Now, the problem comes up, if [Alessi] said instead of 10 percent, 5 percent, we wouldn't be here going through this. We'd just go the distance and let it be. He comes up with a completely different theory. She wasn't tested right. She should have been seen by an orthopedist with respect to one of her disabilities . . . ." Counsel further complained that because Tucker was in France, the plaintiff would be prejudiced by the late disclosure of Alessi as an expert. On that point, counsel for the defendants pointed out that the plaintiff had disclosed four physicians and therefore was free to have someone other than Tucker review Alessi's report.

The court denied the plaintiff's motion to preclude. It stated: "There is no prejudice because you have a

_____

[3] At the November 10, 2005 hearing on the plaintiff's motion to preclude Alessi's testimony, the plaintiff informed the court that she received a facsimile from the defendants concerning Alessi's medical examination of her on October 4, 2005.

doctor. A lot of times in this situation, the prejudice is [that] the party doesn't have time to go out and get a doctor to respond. Well, you have a doctor. You've consented to have your client go to [Alessi]. [His disclosure] was late because you rejected a number of other doctors for what I consider to be invalid reasons. Your client has no prior experience with these people, no bad relations. You just thought they were defendant's doctors. . . . If you need time to confer with your doctor before he testified and show him the report, of course I'll give you that time. But because the defendants tried to cooperate with you and finally did go to the doctor you suggested, which is now one that you want to preclude, I just can't grant this motion and penalize the defendants for cooperation, so the motion is denied . . . ."

On appeal, the plaintiff argues that the disclosure of Alessi as an expert witness was untimely and unduly prejudicial. We are not persuaded. To the contrary, we agree with the court that the late disclosure of Alessi was attributable primarily to the plaintiff's rejection of the first six independent medical examiners suggested by the defendants. Although Tucker resided in France, the plaintiff was free to consult one of the other three experts she previously had disclosed, any of whom could have reviewed Alessi's report. Furthermore, despite the court's overture, the plaintiff did not request a continuance following Alessi's disclosure.

The plaintiff also alleges that the disclosure did not comply with Practice Book § 13-4 (4). That provision "plainly requires a plaintiff to disclose: (1) the name of the expert witness; (2) the subject matter on which the expert is expected to testify; (3) the substance of the facts and opinions to which the expert is expected to testify; and (4) a summary of the grounds for each opinion." *Wexler* v. *DeMaio*, 280 Conn. 168, 180, 905 A.2d 1196 (2006).

The disclosure at issue named Alessi as the expert. It stated that "Alessi will testify as to the physical condition of the plaintiff, whether the plaintiff suffers from any permanent impairment, and the nature and extent of such impairment, the appropriateness and necessity of any treatment either already provided to or proposed for the plaintiff, and whether said injury is causally related to the incident complained thereof." As to the substance of the facts and opinions to which Alessi was expected to testify, the disclosure provided that "[i]t is expected that Dr. Alessi will testify in accordance with his written report (copy attached)."[4] It then listed the following summary of the grounds for his opinions: "Dr. Alessi will testify based on his training, experience and education, his review of [p]laintiff's medical records, diagnostic test results and diagnostic imaging and [p]laintiff's medical history, and his examination of the

---

[4] Alessi's report was three pages long. It stated in relevant part: "Based on my clinical evaluation of [the plaintiff] I believe she is suffering from a left ulnar mononeuropathy, well localized to the left elbow. This has produced 50 [percent] loss in pinprick sensation in her hand. I did not see any evidence to suggest a T1 radiculopathy. I believe that the cyst present on the [magnetic resonance imaging] scans is unrelated to the motor vehicle accident and is stable. I also do not have any specific evidence that the ulnar neuropathy is directly related to this motor vehicle accident. In regard to her left neck and shoulder pain, I believe that these injuries are musculoligamentous in nature, and best evaluated by an orthopedist. There is also no evidence on my examination of complex regional pain syndrome.

"I have reviewed the guides to the evaluation of permanent impairment, page 492, Table 16-15. This is the same table used by Dr. Tucker. Given a 50 [percent] sensory deficit and a maximum upper extremity percentage of 7 [percent] loss due to loss of sensation, I believe that she is entitled to 3.5 [percent] impairment from a sensory standpoint. I was unable to clearly document a motor deficit in an ulnar distribution of the left hand and needle electromyography was not performed, which can often help us in this regard. If there is any motor impairment, I believe that it is minor and I would not assign more than 5 [percent] in this regard bringing the total impairment to 8.5 [percent] of the left upper extremity. Again, I did not find any evidence to suggest that this injury is related to the motor vehicle accident.

"I am additionally concerned by the fact that [the plaintiff] has continued to use twelve tablets per day of Tylenol with codeine, which is a narcotic analgesic."

[p]laintiff. Dr. Alessi may utilize models of portions of the human body, transparencies and acetate overlays, books, photographs and/or diagnostic imaging of the human body."

This court considered a similar disclosure in *Catalano* v. *Falco*, 74 Conn. App. 86, 812 A.2d 63 (2002), cited with approval in *Wexler* v. *DeMaio*, supra, 280 Conn. 188. The plaintiff's disclosure in that case provided: "Subject Matter of Testimony: [Gerald] Becker, an orthopedic surgeon, is expected to testify concerning his examination, diagnosis and treatment of [the plaintiff]. Substance of the Facts and Opinions to which the Expert is Expected to Testify: Becker is expected to testify substantially in accordance with his treatment notes and evaluation and consultation reports, all of which have been provided to defendant's counsel. Summary of the Grounds for Each Opinion: The grounds for Dr. Becker's opinion are his examination and treatment of the plaintiff and his education and professional training, including but not limited to, his experience as an orthopedic surgeon." *Catalano* v. *Falco*, supra, 90 n.2. On appeal, we concluded that the plaintiff's disclosure complied with the requirements of Practice Book § 13-4, as "[t]he plaintiff's disclosure of Becker as an expert witness clearly indicated that he was expected to testify in accordance with his treatment notes and evaluation and consultation reports, which had previously had been provided to the defendant." *Catalano* v. *Falco*, supra, 89–90. We likewise conclude that the disclosure in the present case, to which the report referenced therein was appended, apprised the plaintiff as to the basic details of Alessi's expected testimony. See *Wexler* v. *DeMaio*, supra, 188 (disclosure fails to comply with Practice Book § 13-4 [4] only when disclosure fails to apprise defendant of basic details of plaintiff's claim). Because the disclosure complied with Practice Book

§ 13-4, we cannot say that the court abused its discretion in admitting Alessi's testimony.

### B

The plaintiff also argues that the court abused its discretion in permitting Alessi to testify as to her alleged neck and shoulder pain. In ruling on the plaintiff's motion to preclude Alessi's testimony, the court indicated that Alessi would be permitted to testify only as to those opinions contained in his report. During a subsequent colloquy with the court, counsel for the plaintiff stated that "[Alessi] made a statement that he has nothing to say about the shoulder to neck, and I'm going to make a motion in limine before we take any testimony from him on that." The court responded: "Well, *if* he said he doesn't have an opinion about the shoulder and the neck, he can't testify." (Emphasis added.)

Following Alessi's deposition, but prior to its presentation to the jury, the court heard argument from both parties on the deposition testimony. The plaintiff argued that the report contained no opinion as to the plaintiff's alleged neck and shoulder pain. Counsel for the defendants responded: "I'd like to go back to your ruling, which I understood to be that you weren't opining because you had never seen the report. You weren't opining as to exactly what he was going to be able to say. Your ruling was that he's confined to the report, as I understood it." The court then answered, "right." After reviewing the report and the respective arguments of counsel, the court concluded: "I don't think he's gone beyond his report. I'll allow it to stay in." The plaintiff now challenges that determination.

Unfortunately, we cannot review the plaintiff's claim. The November 18, 2005 transcript provides as follows:

"The Court: All right. We're going to have now, ladies and gentlemen, the video deposition of Dr. Alessi.

"(The taped deposition of Dr. Alessi was played.)

"The Court: All right. Ladies and gentlemen, we'll have a brief recess, and then we'll have final argument of counsel."

That videotaped deposition was not introduced as an exhibit at trial. Furthermore, neither party introduced a transcript of Alessi's deposition. Likewise, the plaintiff on appeal has not provided this court with a transcript of that deposition, rendering us unable to evaluate Alessi's testimony.

In Connecticut, the appellant shoulders the burden of providing this court with an adequate record for review. See Practice Book § 61-10; *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). She has not done so in the present case. Accordingly, we cannot review her claim.

The judgment is affirmed.

In this opinion the other judges concurred.