PAULETTE N. TERIO, ADMINISTRATRIX (ESTATE OF PHILIP S. TERIO), ET AL. *v.* MYL RAMA
(AC 27103)

Schaller, DiPentima and West, Js.

Argued March 15—officially released September 25, 2007

*Ernest F. Teitell*, with whom were *Paul A. Slager* and *Amanda R. Whitman*, for the appellants (plaintiffs).

*Charles W. Fleischmann*, for the appellee (defendant).

*Opinion*

WEST, J. The plaintiff, Paulette N. Terio, individually and as administratrix of the estate of her husband, Philip S. Terio (decedent), appeals from the judgment of the trial court in favor of the defendant physician, Myl Rama, a general practitioner, rendered after a jury trial in this medical malpractice action. On appeal, the plaintiff challenges the propriety of several of the court's evidentiary rulings. On the basis of those claimed improprieties, the plaintiff contends that the court improperly denied her motion to set aside the verdict and for a new trial. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. In the summer of 2001, the decedent was to participate in a Boy Scout camping event with his two children and needed to have a medical evaluation form completed by a physician. On June 25, 2001, the decedent went to the defendant's practice and asked if the form could be completed by the defendant without an examination.[1] The defendant instructed his staff to schedule an appointment that same afternoon so that he could examine the decedent. The decedent came back in the afternoon and was examined by the defendant. That examination consisted of the decedent's vital signs being taken by both staff and the defendant, and a medical history, which revealed that the decedent was an active person, generally. At the time of the examination, the decedent displayed no symptoms of heart trouble such as shortness of breath, chest pains or dizzy spells. The examination included a cardiovascular assessment to determine risk factors for heart disease, but an electrocardiogram (EKG) was not done at the

---

[1] The decedent became a new patient of the defendant's on June 4, 2001, and had been seen one time prior to the June 25, 2001 visit.

examination. On the basis of that examination, the defendant found no reason to limit the decedent's physical activity and indicated such on the Boy Scout medical evaluation form. At the time of the examination, the decedent was given a laboratory slip for routine blood work. Three or four days later, the laboratory results showed that the decedent had high cholesterol.[2] The defendant left several messages for the decedent and finally was able to speak with him. The defendant advised the decedent that he needed to begin treating the high cholesterol with medication and to return for further testing, but the decedent refused to do so. The decedent died in October, 2001, due to ischemic heart disease. The plaintiff brought this medical malpractice action against the defendant, claiming, inter alia, that the defendant failed to examine, to evaluate and to treat the decedent's medical condition adequately. The defendant asserted that the examination was not a full, comprehensive examination, but merely a "camp physical." The issue for the jury was whether the defendant had adhered to the relevant standard of care when, in the course of performing the examination, he chose not to perform an EKG. A trial was held, at the conclusion of which the jury found in favor of the defendant. The plaintiff thereafter filed a motion to set aside the verdict and for a new trial on the ground, inter alia, that the court improperly excluded certain evidence establishing that the defendant billed the decedent, through his insurance carrier, for the cost of a full, comprehensive examination. By memorandum of decision filed October 25, 2005, the court denied the motion and rendered judgment accordingly. On appeal, the plaintiff challenges the court's evidentiary ruling on that singular issue. Additional facts will be set forth as necessary.

[2] The decedent's overall cholesterol level was 283, which included the following breakdown: triglyceride level, 243; LDL cholesterol, 204; and HDL cholesterol ratio of 7.3.

Our review of claims of evidentiary impropriety are governed by well established principles. This court "will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . [B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Citation omitted; internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249, 842 A.2d 1100 (2004); *Midler* v. *Benjamin*, 95 Conn. App. 730, 735, 898 A.2d 258 (2006). In other words, our two part review requires the party seeking a new trial on the basis of a claimed evidentiary impropriety first to establish that the court abused its discretion in its ruling. Only if the plaintiff succeeds in surmounting that first hurdle will this court then consider whether the impropriety was harmful in that it likely affected the result. It is a difficult task to insert ourselves into the realm of the trial while being careful to avoid supplanting the role of the fact finder. The two part review helps to ensure that our role is that of reviewer and not fact finder.

With those important principles in mind, we review the evidence that the plaintiff sought to have admitted. During the course of the trial, the defendant indicated that he performed only a "camp physical," which he explained was "somewhat less detailed than a comprehensive" examination. The defendant also testified that the billing code submitted to the decedent's insurance company listed the physical as a "camp physical." In

contradiction of that testimony, the plaintiff attempted to introduce evidence by way of testimony from her expert witness, Mark Korsten, a board certified internist, and a representative of ConnectiCare, Inc., a managed care organization, to establish that the defendant had billed the decedent's insurance carrier for the cost of a full, comprehensive examination, which should have included an EKG, rather than a "camp physical," and that the billing code submitted to the insurance carrier designated a comprehensive preventive care physical. The plaintiff also sought to introduce the American Medical Association's current procedure terminology code book (code book) to show the definition of the billing code number used by the defendant. Last, the plaintiff sought to cross-examine the defendant about the particular code that he used for billing purposes. The plaintiff maintained that she was entitled to have the jury apprised of the billing code and its significance with respect to the type of examination that was conducted to demonstrate that the examination of the decedent was deficient. The court excluded the plaintiff's proffered evidence, ruling that the code used for billing purposes was not relevant to the ultimate issue of whether the defendant's actions fell below the standard of care and would be unduly prejudicial. In her motion to set aside the verdict and for a new trial, the plaintiff reasserted her argument that the evidence concerning the billing code was relevant and should have been admitted. The court again rejected the plaintiff's arguments and reiterated its reasoning more precisely that the evidence was not relevant, was unduly prejudicial and was in some instances hearsay.[3]

---

[3] In its October 25, 2005 memorandum of decision, the court restated its reasons for excluding the evidence concerning the billing code. "The court precluded the evidence for several reasons. First, there was no claim of fraudulent billing in the case, and, therefore, the evidence, even if relevant, was highly and unfairly prejudicial and subject to be excluded on that ground. . . . . Second, [the defendant] provided the physical exam requested by [the decedent] and required by the Boy Scouts to allow [the decedent] to go on a scout trip with his son. No EKG was sought or required, and the

The central issue in the plaintiff's case was whether the defendant failed to provide an adequate examination, evaluation and subsequent treatment of the decedent. "Generally, evidence is admissible to prove a material fact that is relevant to the cause of action alleged by the plaintiff. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Citation omitted; internal quotation marks omitted.) *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 378, 805 A.2d 130 (2002); see also Conn. Code Evid. § 4-1. Our Supreme Court and this court have emphasized on several occasions that "[t]o be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 635, 841 A.2d 181 (2004); *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 29, 807 A.2d 955 (2002); *Hayes* v. *Casper, Ltd.*, 90 Conn. App. 781, 797–98, 881 A.2d 428, cert. denied, 276 Conn. 915, 888 A.2d 84 (2005); *State* v. *Marshall*, 87 Conn. App. 592, 601, 867 A.2d 57 ("Evidence does not have to be absolutely necessary in order to be admissible. Rather, any evidence that is relevant is admissible unless some other rule makes it inadmissible."), cert. denied, 273 Conn. 925, 871 A.2d 1032 (2005).[4]

representative for the insurance company testified [that] the code used by [the defendant's] office was the only code that could properly be used. Third, the evidence offered tended to show that [the defendant] perhaps should have performed an EKG, and this type of standard of care testimony is not properly admissible through insurance billing code standards. The court also precluded the introduction of a . . . code book, which lists billing codes for physicians for the same essential reasons, and because it was hearsay." (Citation omitted.)

With respect to the code book, we note that the plaintiff sought to have the book introduced, not for the substance of the codes, but rather to show that the defendant had knowledge of the codes. See Conn. Code Evid. § 8-1.

[4] See also Conn. Code Evid. § 4-1 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence").

The type of examination that the decedent was given at his June 25, 2001 visit was in dispute. Although the defendant maintained that it was a "camp physical," the plaintiff claimed that the examination was a full, comprehensive examination and that the defendant did not provide the proper tests that should have been included in such an examination. Evidence that would help to establish the type and nature of the examination given to the decedent had a "logical tendency to aid" in the determination of the issue presented in this case. Moreover, whether the examination was merely a "camp physical" or a more comprehensive examination was dependent, in part, on the credibility of the defendant's testimony. We conclude, therefore, that evidence of the code used for billing purposes was relevant, albeit marginally, to the central issue in the case, i.e., whether the defendant breached the standard of care.

We also conclude that the admission of the evidence would not have created undue prejudice. The fact that the evidence would have had an adverse effect on the defendant does not mean that it was overly prejudicial, especially when weighed against its probative value. We have recognized that "[e]vidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial. To be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Emphasis in original; internal quotation marks omitted.) *Ramos* v. *Ramos*, 80 Conn. App. 276, 281, 835 A.2d 62 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004); *Chouinard* v. *Marjani*, 21 Conn. App. 572, 576, 575 A.2d 238 (1990). On the basis of the facts and circumstances of the present case, the slight evidence concerning the code used for billing purposes did not have the potential to create undue prejudice if admitted into evidence. Accordingly, we conclude that

the court abused its discretion when it excluded the evidence relating to the billing code.

Having concluded that the court abused its discretion by excluding certain evidence concerning the billing code, we now must consider whether the plaintiff has proven that impropriety to be harmful error requiring that she receive a new trial. As stated previously and worth repeating, "[e]ven when a trial court's evidentiary ruling is deemed to be improper, [as is the case here] we [still] must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . [T]he standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 358, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007); *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 530, 832 A.2d 1180 (2003); see also *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990) (rejecting standard that would have required treating as harmless error "any evidentiary ruling, regardless of its effect upon the verdict, so long as the evidence not implicated by the ruling was sufficient as a matter of law to sustain the verdict"). When making such a determination, "the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Dinan* v. *Marchard*, 279 Conn. 558, 567, 903 A.2d 201 (2006); *Kalams* v. *Giacchetto*, supra, 268 Conn. 249–50.

In the present case, the plaintiff has not met that burden of demonstrating harmful error. The exclusion

of evidence of the billing code did not prevent the jury from considering relevant and material evidence that affected the ultimate issue or prevent the plaintiff from proving whether the defendant had breached the standard of care. Both parties had experts testify as to the standard of care used by the defendant, and the absence of the billing code evidence did not detract from their testimony. With respect to the probative value of the evidence in challenging the defendant's credibility, we note that there was corroborating evidence, which supported the defendant's testimony that the examination provided was a "camp physical," and thus lent itself to establishing his credibility. Regardless of how the examination subsequently was billed to the insurance carrier, that in and of itself did not change the nature of the actual examination or alter the circumstances in which the decedent sought to have the examination performed, i.e., in order for the defendant to be able to complete the Boy Scout medication form. Moreover, the plaintiff was not precluded from cross-examining the defendant about the type of examination given to the decedent and, in fact, did so extensively. It is highly unlikely that the jury would have reached an opposite conclusion on the basis of that slight evidence about the billing code, and, therefore, the court's ruling was not likely to have affected the result of the trial.[5]

[5] In determining whether the court's improper exclusion warrants a new trial, we must look to the unique facts and circumstances of each particular case to determine whether the impropriety was harmful. "The determination of [harmful error] lies in the record." (Internal quotation marks omitted.) *566 New Park Associates, LLC* v. *Blardo*, 97 Conn. App. 803, 812, 906 A.2d 720 (2006). The cases cited by the plaintiff are factually distinguishable and not persuasive. See *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 475, 661 A.2d 123 (exclusion determined to be harmful where "plaintiff was deprived of the right to have the jury, as trier of fact, weigh the credibility of the expert witness by assessing his motives for testifying as he did"), cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995); *Chouinard* v. *Marjani*, supra, 21 Conn. App. 577–78 ("court's evidentiary ruling prevented the jury from considering relevant and material evidence affecting the ultimate issue as to whether the defendant had the plaintiff's oral consent for the bilateral surgery"). In the present case, the billing code submitted on the insurance

Although we conclude that evidence of the code used for billing purposes was marginally relevant to the central issue in the case, i.e., whether the defendant breached the standard of care, we further conclude that the court's impropriety in excluding that evidence was harmless.

The plaintiff contends that the court improperly refused to set aside the verdict on the basis of her evidentiary claims that we have already addressed. We disagree.

"The proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Milardo* v. *Kowaleski*, 101 Conn. App. 822, 825, 924 A.2d 142 (2007).

For all of the reasons already set forth, we must conclude that the court did not abuse its discretion in denying the motion to set aside the verdict and for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.

form was done after the examination and was only marginally relevant to the central issue in the case, unlike the evidence excluded in the cases cited by the plaintiff.