CHRISTOPHER R. RUSSO, SR., ADMINISTRATOR (ESTATE OF LOUISE RUSSO), ET AL. *v.* PHOENIX INTERNAL MEDICINE ASSOCIATES, P.C., ET AL. (AC 27696)

Gruendel, Robinson and West, Js.

Argued March 19—officially released July 8, 2008

*Kathleen L. Nastri,* for the appellants (plaintiffs).

*James S. Newfield,* for the appellees (named defendant et al.).

GRUENDEL, J. The plaintiff Christopher R. Russo, Sr., on his behalf and as administrator of the estate of his wife, Louise Russo, the decedent, appeals from the judgment rendered after a jury trial in favor of the defendants, Phoenix Internal Medicine Associates, P.C. (Phoenix), and one of its members, Leonardi Koliani, a board certified internist. On appeal, the plaintiff claims that the court improperly granted the defendants' motion in limine to preclude the testimony of one of his expert witnesses, Ahvie Herskowitz, a board certified cardiologist and a board certified internist. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Beginning in September, 2000, the decedent was treated at Phoenix for asthma related symptoms, including wheezing, sinus congestion and infection for which she was prescribed steroids and antibiotics. Beginning on January 19, 2001, the decedent informed Koliani that she was suffering from new symptoms. She reported that in addition to her asthma, she had throat discomfort, chest tightness, shortness of breath when she exerted herself and ankle swelling. Koliani examined the decedent and diagnosed her as having a steroid induced yeast infection in her throat due to the asthma medication and recurrent asthma symptoms. In addition, Koliani ordered an echocardiogram to evaluate the function of the decedent's heart. Because of her new symptoms, he thought it was possible that the decedent might be suffering from a viral infection in her heart known as myocarditis, or from sleep apnea.

Robert Soufer, a board certified cardiologist, performed an echocardiogram on the decedent on or about February 6, 2001. He interpreted the echocardiogram and found that the decedent had a small to moderate pericardial effusion, which is an accumulation of fluid

in the outside lining of the heart. Soufer also reported that the pericardial effusion did not explain the decedent's shortness of breath, and he instructed Koliani to continue to observe the decedent. On the basis of the echocardiogaphic finding, Koliani ruled out the possibility of sleep apnea and thought that the decedent might be suffering from a resolving viral myocarditis. In addition, he diagnosed her with steroid induced fluid retention, which explained her ankle swelling.

On February 13, 2001, the decedent telephoned Koliani's office and reported that although she had been breathing a little better for the past four to five days, she had been experiencing "flu like" symptoms in that she was very weak, had a temperature of 103 degrees Fahrenheit and could not do a "simple task." Concerned that the decedent might have developed pneumonia, Koliani diagnosed her with an infection of her respiratory tract for which he prescribed antibiotics and ordered a chest X ray. Her medical chart indicated that the chest X ray was put on hold. Although not indicated in her medical chart, Koliani testified that it was put on hold because the decedent refused it. He also testified that she was offered an appointment to be seen by him on February 13, 2001, but that she refused that as well.

The decedent died in the early morning hours of February 15, 2001. Koliani received a telephone call from the medical examiner on that day and reported to the medical examiner that the decedent had a history of asthma, flu like symptoms, a fever and a small to moderate pericardial effusion. In addition, he told the medical examiner that the likely causes of the decedent's death were viral myocarditis or an acute bronchospasm. The medical examiner listed the likely causes of death as cardiac arrhythmia or infarction from viral myocarditis and obesity. No autopsy was performed.

The plaintiff subsequently brought this medical malpractice action against the defendants. The plaintiff alleged that the defendants failed to exercise that degree of care and skill ordinarily and customarily used by physicians specializing in the field of internal medicine and its subspecialties in that they "[a] failed to adequately and properly care for, treat, monitor, diagnose and supervise the plaintiff's decedent . . . [b] failed to properly perform the echocardiogram . . . [c] failed to properly interpret the echocardiogram . . . [d] failed to properly diagnose her true condition; [e] failed to provide appropriate follow up medical therapy after obtaining the results of the echocardiogram . . . [f] failed to refer the plaintiff's decedent to a cardiologist; [g] failed to timely hospitalize the plaintiff's decedent after obtaining the results of the echocardiogram . . . [h] failed to timely obtain diagnostic testing; [i] failed to refer the plaintiff's decedent to a pulmonary specialist; [j] failed to perform complete physical examinations; [k] failed to prescribe proper medications; [l] failed to maintain a complete medical chart; and [m] failed to promulgate rules, regulations, standards and protocols for the treatment of patients such as the plaintiff's decedent."

In the months leading to trial, in compliance with Practice Book § 13-4, the plaintiff disclosed two experts expected to testify at trial, Paul Lewinter,[1] a board certified internist, and Herskowitz.[2] The defendants deposed

[1] Lewinter was disclosed to testify that the defendants departed from the applicable standard of care in one or more of the following ways: "[a] failed to construct a reasonable differential diagnosis and workup; [b] failed to follow up on the results of the echocardiogram; [c] failed to perform a thorough examination of the plaintiff's decedent who presented with ankle edema, shortness of breath, weakness and hypertension, which would have included an examination for phlebitis, an abdominal examination, and examination for tamponade and a urinalysis; [d] failed to take an adequate history in light of chest tightness; and [e] failed to hospitalize the plaintiff's decedent, given her complaints and the lack of diagnosis."

[2] Herskowitz was disclosed to testify that the defendants departed from the applicable standard of care in one or more of the following ways: "[a]

Lewinter and Herskowitz. From a review of the decedent's medical records, Lewinter opined on the basis of a reasonable degree of medical probability that the decedent died from a pulmonary embolism and that Koliani breached the standard of care of a board certified internist by failing to diagnose and to treat the decedent for a pulmonary embolism, which breach caused the decedent's death. He further concluded that it was not medically probable that the decedent died from viral myocarditis because the echocardiogram did not show wall motion abnormalities that would be consistent with that diagnosis. Herskowitz also reviewed the decedent's medical records and testified that he was unable to narrow the decedent's cause of death to one diagnosis. He opined on the basis of a reasonable degree of medical probability that the decedent could have died from one of three conditions, either from a pulmonary embolism, ischemic heart disease or viral myocarditis, and that the failure of Koliani to diagnose or to follow-up and treat for these three conditions was a breach of the standard of care of a board certified internist, which breach caused the decedent's death.

During his deposition, when Herskowitz was asked how he arrived at the two additional diagnoses not contemplated by Lewinter, particularly viral myocarditis, he testified that he had "additional information and

---

failed to construct a reasonable differential diagnosis and workup; [b] failed to follow-up on the results of the echocardiogram; [c] failed to perform an [electrocardiogram], despite her cardiac symptoms; [d] failed to perform a thorough examination of the plaintiff's decedent who presented with ankle edema, shortness of breath, weakness and hypertension; [e] prescribed asthma medication over the telephone, despite a lack of asthma symptomatology on her most recent visit; [f] failed to take an adequate history in light of chest tightness; and [g] failed to hospitalize the plaintiff's decedent, given her complaints and the lack of diagnosis." In addition, Herskowitz was disclosed to testify that the decedent's death was related to pulmonary embolism, cardiac tamponade and ischemic heart disease and that Koliani failed to consider and to follow-up on these diagnoses.

knowledge of viral myocarditis, and perhaps that confounds my ability to sort of decide on one versus the other." He also opined that "there are any number of potential causes, but the three most likely, based on my experience and knowledge, would be those three." Further, he testified that according to his reading of the echocardiogram, there was no way to rule out viral myocarditis.[3]

Approximately three months prior to the start of the trial, the defendants filed a motion to preclude the testimony of Herskowitz on the ground that it would duplicate parts of Lewinter's testimony and would contradict other parts of Lewinter's testimony. The court, *Trombley, J.*, denied the defendants' motion on March 6, 2006, without comment. On March 30, 2006, the defendants moved again, by way of a motion in limine, to preclude the testimony of Herskowitz on the ground that it would duplicate parts of Lewinter's testimony and that it would confuse the standard of care to which Koliani should be held. On the eve of trial, the court, *Bozzuto J.*, heard argument on the motion in limine. The court found that Herskowitz' deposition testimony was cumulative of Lewinter's deposition testimony, would invite confusion and possibly mislead the jury and had the potential to hold Koliani to a different standard of care than the law required. On those grounds, the court granted the defendants' motion and precluded Herskowitz' testimony. The case was tried to the jury, and the jury found in favor of the defendants. The plaintiff moved to set aside the verdict. The court denied the motion and rendered judgment in favor of the defendants in accordance with the jury verdict. This appeal followed.

---

[3] Specifically, Herskowitz testified: "The basis of my opinion is that viral myocarditis can present without regional wall motion abnormalities on the echocardiogram, without systolic dysfunction on the echocardiogram, and can solely present with pericardial effusion and diastolic dysfunction, both of which I believe that [the decedent] showed."

Before we analyze the plaintiff's claim, we first determine the applicable standard of review. The plaintiff suggests that in precluding Herskowitz' testimony, the court misinterpreted General Statutes § 52-184c, Connecticut Code of Evidence § 7-4 and Practice Book § 13-4 and that we should afford plenary review of the court's ruling because the ruling presents a question of law. We disagree. In concluding that Herskowitz' testimony should be precluded, the court did not engage in statutory interpretation. Rather, the court made an evidentiary ruling that Herskowitz' testimony should be precluded because its prejudicial effect would outweigh its probative value. Accordingly, we review the court's ruling under the abuse of discretion standard of review.

"It is well established that [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Concerning expert testimony specifically, the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Al-Janet, LLC* v. *B & B Home Improvements, LLC*, 101 Conn. App. 836, 845, 925 A.2d 327, cert. denied, 284 Conn. 904, 931 A.2d 261 (2007).

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Terio* v.

*Rama,* 104 Conn. App. 35, 39, 930 A.2d 837 (2007), cert. denied, 285 Conn. 912, 943 A.2d 471 (2008). Only if the plaintiff succeeds in demonstrating that the court abused its discretion, must we consider whether the impropriety was harmful. Id.

I

The plaintiff first claims that the court improperly precluded Herskowitz' testimony on the standard of care because he was qualified to testify as a similar health care provider in accordance with § 52-184c. Regardless of whether Herskowitz was qualified to testify as a similar health care provider,[4] the court concluded that the substance of his testimony was inadmissible because it was cumulative of Lewinter's, would invite confusion and possibly mislead the jury and had the potential to hold Koliani to a different standard of care than the law required.

We first discuss the court's finding that Herskowitz' testimony had the potential to hold Koliani to a different standard of care than the law required. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, the plaintiff must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons." (Citation omitted; internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital,* 272 Conn. 551, 567, 864 A.2d 1 (2005).

---

[4] General Statutes § 52-184c (c) provides in relevant part: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . ."

In proving the requisite standard of care for treatment in which it is alleged that the decedent's injury or death resulted from the negligence of a health care provider, the plaintiff "shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care *for that health care provider*. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is *recognized as acceptable and appropriate by reasonably prudent similar health care providers*." (Emphasis added.) General Statutes § 52-184c (a).

In the present case, because Koliani is a board certified internist, it was the plaintiff's burden to present expert testimony of what a reasonably prudent board certified internist would have done under the facts and circumstances of the present case. Furthermore, because Herskowitz maintained two board certifications, one as an internist and one as a cardiologist, it was paramount for the plaintiff to prove to the court that Herskowitz not only knew the standard of care of a board certified internist but also that he would testify to that standard of care without imposing the standard of care expected of a board certified cardiologist. See *Friedman* v. *Meriden Orthopaedic Group P.C.*, 272 Conn. 57, 69, 861 A.2d 500 (2004) ("The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness' particular specialty if it differs from that of the defendant. . . . [T]he crucial question is whether . . . [the expert] knows what . . . [the standards of practice] are." [Internal quotation marks omitted.]).

The plaintiff argues that Herskowitz knew what the standard of care of a board certified internist was under the facts and circumstances of this case and that he therefore should have been allowed to testify that a board certified internist should have considered ischemic heart disease and viral myocarditis on his differential diagnosis of the decedent. The plaintiff's argument misses the mark. Regardless of whether Herskowitz knew the standard of care applicable to a board certified internist, his deposition testimony was not limited to that standard of care. He testified that he considered the diagnoses of viral myocarditis and ischemic heart disease not as a result of his experience as an internist but, rather, as a result of his "experience and knowledge" and his "additional information and knowledge of viral myocarditis." The court understood this testimony to mean that Herskowitz arrived at these two diagnoses on his differential as a result of his education, training and experience as a cardiologist, not as an internist. The plaintiff's counsel confirmed the court's understanding when, during argument on the motion in limine, the court asked the plaintiff's counsel whether two of Herskowitz' three diagnoses were a result of his expertise as a cardiologist, and the plaintiff's counsel responded that they were. Because Herskowitz arrived at the diagnoses of viral myocarditis and ischemic heart disease as a result of his education, training and experience as a cardiologist, the court did not abuse its discretion when it precluded Herskowitz from testifying that a board certified internist should have done the same, regardless of whether Herskowitz was qualified as a similar health care provider.

In addition, the court found that Herskowitz' testimony had the potential to confuse the jury. We agree. Herskowitz' deposition testimony that on the basis of a reasonable degree of medical probability, viral myocarditis was one of three conditions from which the

plaintiff could have died was inconsistent with Lewinter's deposition. Lewinter testified that it was not medically probable that the decedent died from viral myocarditis because the echocardiogram did not show any condition consistent with that diagnosis. Such inconsistent testimony had the potential to confuse the jury.

Furthermore, that part of Herskowitz' testimony that was consistent with Lewinter's testimony was cumulative and was precluded properly. See *Glaser* v. *Pullman & Comley, LLC,* 88 Conn. App. 615, 627, 871 A.2d 392 (2005) ("[e]vidence is cumulative if it multiplies witnesses or documentary matters to any one or more facts that were the subject of previous proof"). Because the court may, in its discretion, preclude evidence if its probative value is outweighed by the needless presentation of cumulative evidence, the court did not abuse that discretion in precluding that part of Herskowitz' testimony that was consistent with Lewinter's testimony. See id. The plaintiff's claim, therefore, fails.

II

In the alternative, the plaintiff argues that even if the court properly precluded Herskowitz' testimony regarding the standard of care, it improperly precluded his testimony regarding causation. In addition to proving the requisite standard of care for treatment and a deviation from the standard of care, the plaintiff was required to prove a causal connection between the deviation and the claimed injury. *Cavallaro* v. *Hospital of Saint Raphael,* 92 Conn. App. 59, 65, 882 A.2d 1254, cert. denied, 276 Conn. 926, 888 A.2d 93 (2005). Furthermore, because there was no autopsy performed on the decedent, the plaintiff had to prove from what the decedent had died.

The plaintiff argues that the court abused its discretion in precluding Herskowitz' testimony on causation because § 52-184c does not preclude expert witnesses

of a specialty different from that of a defendant from testifying regarding the element of causation. Although we agree with that proposition, it does not persuade us that the court abused its discretion in precluding Herskowitz' causation testimony.

Under the facts and circumstances of this case, the court's preclusion of Herskowitz' testimony on the standard of care necessarily precluded his testimony on causation. Because Herskowitz was precluded from testifying that Koliani breached the standard of care of a board certified internist by failing to diagnose or to follow-up and treat for viral myocarditis, ischemic heart disease and a pulmonary embolism, he also was precluded from testifying that the failure to do so was the cause of the decedent's death. That testimony would have implicated his improper testimony on the standard of care. In addition, Herskowitz' testimony on the cause of the decedent's death was speculative. He testified that he was unable to narrow down the decedent's death to one cause and that to a reasonable degree of medical probability the decedent could have died from any one of three causes. Such testimony was improper, and the court was within its discretion to preclude it. We conclude that the court did not abuse its discretion in precluding Herskowitz' testimony.

The judgment is affirmed.

In this opinion the other judges concurred.