JAMES FRIEDMAN *v.* MERIDEN ORTHOPAEDIC GROUP, P.C., ET AL.
(SC 17047)

Sullivan, C. J., and Borden, Norcott, Vertefeuille and Zarella, Js.

Argued September 24—officially released December 14, 2004

*Carey B. Reilly,* for the appellant (plaintiff).

*David J. Robertson,* with whom, on the brief, were *Charles W. Fleischmann* and *Madonna A. Sacco,* for the appellees (named defendant et al.).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether the trial court, pursuant to General Statutes § 52-184c (d) (2),[1] properly precluded certain

[1] General Statutes § 52-184c provides in relevant part: "(a) In any civil action to recover damages resulting from personal injury . . . in which it is alleged that such injury . . . resulted from the negligence of a health care provider . . . the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar

portions of the testimony of the plaintiff's expert regarding the prevailing professional standard of care in this medical malpractice action. The plaintiff, James Friedman, appeals, following our grant of certification,[2] from the judgment of the Appellate Court affirming the trial court's judgment, rendered after a jury trial, in favor of the defendants, Meriden Orthopaedic Group, P.C., and Paul Zimmering.[3] The plaintiff claims that the Appellate Court improperly concluded that he had failed to establish an adequate foundation to admit certain portions

health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. . . ."

[2] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the trial court properly preclude the plaintiff's board certified radiologist from testifying against the defendants?" *Friedman* v. *Meriden Orthopaedic Group, P.C.*, 265 Conn. 905, 831 A.2d 249 (2003).

[3] The defendants in this case are Meriden Orthopaedic Group, P.C., and Paul Zimmering, an orthopedic surgeon who was employed by the defendant corporation. The plaintiff withdrew his claims against two other employees of the corporation, John Greco and Leo Willett, Jr., before trial. We refer in this opinion to Meriden Orthopaedic Group, P.C., and Zimmering as the defendants.

of a board certified radiologist's deposition testimony that related to the standard of care applicable to an orthopedic surgeon. We affirm the judgment of the Appellate Court.

The plaintiff brought this medical malpractice action against the defendants for injuries that he allegedly had suffered during an operation to remove a herniated disc from his lower back. After a trial to the jury, a verdict was returned in favor of the defendants. The trial court denied the plaintiff's motion to set aside the verdict and rendered judgment for the defendants. The Appellate Court affirmed the judgment of the trial court. *Friedman* v. *Meriden Orthopaedic Group, P.C.*, 77 Conn. App. 307, 319, 823 A.2d 364 (2003). This certified appeal followed.

The record reveals the following facts and procedural history relevant to this appeal. The plaintiff consulted Zimmering, a board certified orthopedic surgeon, on October 29, 1992, because the plaintiff was suffering from a condition that Zimmering subsequently diagnosed as sciatica. During the consultation, Zimmering performed a physical examination of the plaintiff, had a technician take x-rays of the plaintiff's back and ordered a magnetic resonance imaging (MRI) scan to be taken at the hospital. Zimmering reviewed the X rays himself, without consulting a radiologist, and noted no abnormalities. A subsequent review of the MRI scan by a radiologist revealed, however, that the plaintiff had a herniated disc.

During surgery to remove the herniated disc, Zimmering discovered that the plaintiff had spina bifida occulta (spina bifida), a congenital anomaly of the sacral spine that resulted in a fifteen millimeter gap in the bony lamina protecting the plaintiff's spinal cord. Concomitant with his discovery of the spina bifida, Zimmering inadvertently cauterized a nerve root exposed by the

spina bifida with an electrocautery being used to stop the plaintiff's bleeding. Following the surgery, the plaintiff experienced numbness in his genital and anal regions, which are symptoms of cauda equina syndrome, resulting in permanent bowel, bladder and sexual dysfunction.

The plaintiff's theory of the case was that the failure to diagnose the spina bifida prior to the operation had led Zimmering to cauterize the exposed nerve root, resulting in the plaintiff's cauda equina syndrome. This theory was premised on the plaintiff's claim that Zimmering had deviated from the applicable standard of care in failing to diagnose the spina bifida from the X rays prior to the operation.

The trial began on January 9, 2001. To support his claim that Zimmering had deviated from the applicable standard of care in failing to detect the spina bifida from the X rays prior to the operation, the plaintiff sought to introduce the testimony of Barry Pressman, a board certified radiologist with a certificate in neuroradiology, to that effect. Because Pressman, who was a California resident, was not available to testify at trial, his videotaped deposition was taken during the trial, on January 25, 2001. During the deposition, the defendants objected, without stating the basis for the objections, to several of the plaintiff's questions to Pressman concerning his opinion of whether the spina bifida would have been visible on the X rays taken by the defendants.[4]

During the trial, on February 9, 2001, the parties argued the defendants' objections before the trial court following its review of Pressman's deposition testi-

[4] The X rays taken at Zimmering's office on October 29, 1992, were lost prior to the trial. Pressman based his opinions on a myelogram, which included X rays, performed on February 26, 1993.

mony.[5] The basis of the defendants' objections was that there was no foundation laid in Pressman's deposition testimony that the standard of care applicable to an orthopedic surgeon like Zimmering was the same as that applicable to a neuroradiologist like Pressman and, therefore, Pressman's testimony regarding the standard

[5] Specifically, the trial court heard arguments on the defendants' objections to the following questions and answers between the plaintiff and Pressman during his deposition:

"Q. . . . And taking, for example, a plain X ray film, what are some of the steps a diagnostic radiologist would go through in an attempt to determine spina bifida?

"A. Well, that's a little hard to answer. I mean, we are trained to recognize it, because when you are looking at the films, you are looking to make sure all the bony landmarks are there and in the right place. And if they are either not there or they are in the wrong place, you start to try to figure out why. And so that's—that's the best I can answer your question. . . .

"Q. . . . Doctor, do you have an opinion—based on the studies that you have seen, do you have an opinion to a reasonable degree of medical probability whether or not a plain AP X ray film, taken on or about [October 29, 1992], of [the plaintiff's] lumbosacral spine would have revealed spina bifida? . . .

"A. I have an opinion, yes.

"Q. What is that opinion, doctor?

"A. I think it most certainly would have shown it.

"Q. And what's the basis of that opinion? . . .

"A. . . . [February 26, 1993] the lumbar myelogram AP view, which includes the sacrum, clearly demonstrates spina bifida. And I believe that any studies done prior to that date would have demonstrated it if they were of reasonable quality equally as well. . . .

"Q. And is it fair to say, doctor, that so long as any lumbar or lumbosacral studies included at least S1, that the missing lamina would have been seen at least at the S1 level? . . .

"A. That's my opinion.

"Q. Doctor, I want you to assume that Dr. Zimmering wrote the following in his office notes of [October 29, 1992]. Quote: 'Lumbar spine films taken today show no evidence of disk space narrowing. There is no spondylosis or spondylolisthesis. No acute or chronic changes are noted.' . . . Doctor, if at least the S1 vertebra was included in the lumbar spine films that Dr. Zimmering referenced in his note of [October 29, 1992], do you have an opinion whether or not that interpretation I just read to you would be accurate? . . .

"A. If there was an AP view that included the upper sacrum, S1, then it would have shown, in my opinion, spina bifida, and therefore the report would have been inaccurate because it wouldn't have mentioned it."

of care applicable to Zimmering was inadmissible. The trial court sustained the defendants' objections, pursuant to § 52-184c, because the plaintiff had "not properly laid [a foundation] for whether this neuroradiologist [could] testify as to the standard of care that an orthopedist reading an X ray would have exercised in regard to these questions."

The plaintiff twice attempted to cure the foundational deficiency. On February 13, 2001, the plaintiff sought to establish the necessary foundation by recalling Zimmering to the stand to question whether he was aware of any difference between the standard of care applicable to a radiologist and the standard of care applicable to an orthopedic surgeon for the purpose of reading X rays. After Zimmering's testimony, the trial court ruled that the portion of Pressman's testimony regarding the applicable standard of care would remain excluded under § 52-184c because Zimmering could not testify as to whether Pressman had given his opinion based on the standard of care applicable to a neuroradiologist or the standard of care applicable to an orthopedic surgeon. The plaintiff then requested permission to establish the necessary foundation by conducting a telephonic deposition with Pressman that evening. The trial court denied the plaintiff's request because closing arguments were scheduled for the next day and Pressman could not be available for such a deposition until 9 p.m. or 10 p.m. eastern time.

The plaintiff claims that the trial court's preclusion of certain portions of Pressman's testimony was improper because the similarity between the activities that Pressman and Zimmering performed when reading X rays, along with the fact that Pressman knew that Zimmering was an orthopedic surgeon when he offered the testimony, laid a sufficient foundation to find that Press-

man's testimony established the standard of care applicable to an orthopedic surgeon reading X rays.[6] The defendants counter that the preclusion was proper

[6] The plaintiff also raises the following additional claims on appeal: (1) the trial court abused its discretion in precluding Pressman's testimony (a) because the defendants had waived their right to object to Pressman's competency to testify by failing to raise the issue at the time of Pressman's deposition, when it could have been obviated or removed, and (b) by refusing to allow the plaintiff an opportunity to conduct an additional deposition of Pressman to correct the foundational deficiency; (2) Pressman's testimony should have been admitted as a " 'similar health care provider' " as defined in § 52-184c (c) (2); see footnote 1 of this opinion; and (3) Pressman's testimony should have been admitted on the plaintiff's alternative theory of liability that Zimmering was negligent in failing to refer the plaintiff to a radiologist, or as the testimony of a fact witness to demonstrate that the plaintiff had spina bifida.

We decline to consider any of these claims. The plaintiff failed to raise either the waiver claim or the admissibility of Pressman's testimony under § 52-184c (c) (2) before the trial court. In fact, with respect to the claim under § 52-184c (c) (2), contrary to the assertion in the plaintiff's brief that "[t]he [trial] court did find . . . that . . . Zimmering, a board certified orthopedic surgeon, was acting outside his specialty when he read [the plaintiff's] X rays," an assertion with no reference to the record, our thorough review of the record reveals that the trial court acknowledged that testimony existed "that orthopedists who are looking at this kind of injury do take X rays . . . and read them in the furtherance of their diagnosis and their preparation for . . . treatment." That statement simply corresponds with the common understanding that an orthopedic surgeon is not acting outside of his specialty when he reads X rays, a task such a physician undertakes on a regular basis as part of his diagnostic routine. It does not establish that whenever an orthopedist reads X rays, he acts outside of his specialty.

Moreover, the plaintiff failed to raise properly any of these additional claims in the Appellate Court. The sole statement of the issue before the Appellate Court, as presented in the plaintiff's brief, was as follows: "Did the trial court err in finding that the plaintiff failed to lay a foundation sufficient to admit the testimony of [the] plaintiff's expert, a board certified radiologist, regarding the standard of care applicable to [Zimmering], when he read X rays of the plaintiff's spine?" None of the other additional claims raised by the plaintiff was presented to the Appellate Court as claims meriting separate consideration by that court as grounds for reversal of the trial court judgment.

Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Furthermore, we ordinarily decline to consider claims not raised properly before the Appellate Court or contained in the certified question to this court. *State* v. *Gilbert*, 229 Conn. 228, 246, 640 A.2d 61 (1994). "On certification, our focus is on the judgment of the Appellate Court." Id.

because the plaintiff failed to develop a sufficient foundation to find that Pressman's testimony established the applicable standard of care. We agree with the defendants.

We begin with a review of the statute. "Section 52-184c addresses the standard of care and the qualifications of testifying experts in medical malpractice actions. [The statute] sets forth four distinct, yet closely intertwined, subsections. Section 52-184c (a) requires the plaintiff to prove, by a preponderance of the evidence, that the defendant breached the prevailing professional standard of care for that health care provider. . . . That subsection then defines the prevailing professional standard of care for a given health care provider [as] that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent *similar health care providers.*" (Emphasis in original; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 90–91, 828 A.2d 31 (2003). Subsections (b) and (c) of § 52-184c define a " 'similar health care provider' " for purposes of the statute. Section 52-184c (d) identifies those health care providers who may testify as an expert in any action as: "(1) . . . a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) . . . a . . . health care provider . . . [who] to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. . . ."

With this background in mind, we first consider the scope of review of the trial court's ruling. The scope of review depends on the nature of the question presented to the trial court. The plaintiff argues that,

because the trial court incorrectly construed § 52-184c (b) or (c) in reaching its decision, this case presents a question of statutory interpretation and, therefore, we should conduct a de novo review of the trial court's decision to preclude Pressman's testimony. Because we conclude, however, that the plaintiff offered Pressman's testimony pursuant to, and the trial court based its decision on, § 52-184c (d) (2),[7] no genuine question of statutory construction exists, and we review the trial court's decision as a ruling on the qualification of Pressman as an expert for the purpose of establishing the standard of care applicable to Zimmering. "The trial court [generally] has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 648, 817 A.2d 61 (2003).

We ordinarily decide appeals on the basis on which the issues were presented to and decided in the trial court. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 361, 727 A.2d 1260 (1999). Our review of the trial court record persuades us that the plaintiff argued for the admissibility of Pressman's testimony pursuant to § 52-184c (d) (2), and that the trial court decided the question on that basis, namely, whether Pressman, although as a neuroradiologist he was not a "similar health care provider" vis-à-vis Zimmering, an orthopedist, nonetheless "possesse[d] sufficient training, experience and knowledge" of the "related field of medicine" of orthopedics so as to be able to provide expert testimony as to the prevailing professional standard of care in the field of orthopedics. Viewed through that prism, we review the trial court's

---

[7] The Appellate Court's decision was also based on § 52-184c (d) (2). *Friedman* v. *Meriden Orthopaedic Group, P.C.*, supra, 77 Conn. App. 317–18.

ruling regarding Pressman's qualifications under an abuse of discretion standard.

Our review of the record discloses that the plaintiff presented Pressman's testimony as admissible under § 52-184c (d) (2). During argument before the trial court on February 9, 2001, concerning the defendants' objection to Pressman's testimony, the trial court requested that the plaintiff "show [it] where [in the deposition testimony] a neuroradiologist reading [the X ray] would see the same things that an orthopedist reading [the X ray] would . . . ." The plaintiff's counsel responded: "My recollection of the statute is that you can have opinion testimony in two ways. One is if you have the board certified individual, the other is if the individual participates in that particular area with regularity.

"I'm not obviously quoting word for word the statute, but it's the second subsection of the expert who you can have testify as to that area. You don't need someone to come in and say 'I am an orthopedic surgeon who is board certified' in order to elicit the opinion.

"So if they are both doing the same level of work, I believe that you don't have to have that equivalency in there that you are speaking to because I don't think I can point anywhere specifically in this transcript to a question asked by [the plaintiff's counsel], 'Doctor, are you on the same, do you see the same thing as an orthopedic surgeon,' because that's not in the transcript. And I'm sure Your Honor has reviewed the transcript and hasn't found that because I know it's not in there."

This statement to the trial court does not make clear which provision the plaintiff's counsel intended to invoke by his reference to "the *second subsection* of the expert who you can have testify as to that area." (Emphasis added.) First, the plaintiff's counsel could not have been referring to § 52-184c (b) (2), because

that entire subsection deals with cases in which the defendant is neither board certified nor a specialist, and Zimmering was a board certified orthopedic specialist. Although arguably the plaintiff's counsel sought to invoke § 52-184c (c) (2), by his statement, "if the [expert] participates in that particular area with regularity," we conclude that he was in fact invoking § 52-184c (d) (2), by his reference to "the second subsection of the expert who you can have testify in that area," because subsection (d) of § 52-184c begins with the language, "[a]ny health care provider *may testify as an expert in any action* . . . ." (Emphasis added.) Thus, § 52-184c (d) is the subsection that ultimately determines, by reference to its own terms as well as to the terms of subsections (b) and (c), who may testify as an expert.

Furthermore, it is clear that the trial court understood the plaintiff's claim to be under § 52-184c (d) (2). The trial court sustained the defendants' objections stating: "The statute says *in the subsection that [the plaintiff] was referring to,* 'but to the satisfaction of the court, possesses a sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine.' And as counsel had indicated, the given field of medicine here is an orthopedist's reading X rays. And in [Pressman's] answer it is clear that he is answering not as a radiologist who knows what the standard of care is for an orthopedist reading X rays . . . ." (Emphasis added.) Thus, the trial court quoted directly from § 52-184c (d) (2) in sustaining the defendants' objections, and the plaintiff did not disabuse the trial court of that understanding.

Applying the terms of § 52-184c (d) (2) to the testimony offered by the plaintiff, we conclude that the trial court did not abuse its discretion in excluding the evidence. Pressman was an expert in neuroradiology,

a different specialty from that of Zimmering, namely, orthopedics, and the trial court was well within its discretion in ruling that there was insufficient evidence to conclude that Pressman knew the "prevailing professional standard of care" applicable to orthopedics. In the present case, Pressman's particular specialty, neuroradiology, differed from that of Zimmering, orthopedic surgery, and Pressman failed to demonstrate any knowledge of the standard of care applicable to an orthopedic surgeon. In response to a question concerning the steps a diagnostic radiologist would go through in an attempt to identify spina bifida from an X ray, Pressman responded, "we are trained to recognize it, because when you are looking at the films, you are looking to make sure all the bony landmarks are there and in the right place." Pressman did not elaborate on whether the group which he referred to as "we" and "you" was limited to board certified radiologists like himself, or also included orthopedic surgeons like Zimmering, and the plaintiff never requested clarification. Our review of the record leads us to conclude that the plaintiff failed to elicit any testimony demonstrating Pressman's knowledge of the standard of care applicable to an orthopedic surgeon reading X rays. The trial court's ruling in the present case comports with this court's guidance in *Pool* v. *Bell*, 209 Conn. 536, 551 A.2d 1254 (1989). "The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness' particular specialty if it differs from that of the defendant. . . . [T]he crucial question is whether . . . [the expert] knows what . . . [the standards of practice] are." (Citations omitted; internal quotation marks omitted.) Id., 542. This conclusion is consistent with

the conclusions reached by both the trial court and the Appellate Court.

Nonetheless, the plaintiff relies on the trial court's response to his subsequent request for a statement of the basis for its ruling refusing to allow the plaintiff to conduct a telephonic deposition of Pressman on February 13, 2001, to suggest that the trial court relied on subsection (b) of § 52-184c, rather than on subsection (d), in sustaining the defendants' previous objections to Pressman's testimony. The record indicates that during its response to that request, the trial court did appear to refer to § 52-184c (b) as follows: "The plaintiff's request either through their case-in-chief or through their rebuttal case to bring in . . . Pressman by way of videotaped deposition to try to qualify a foundation for his opinions that he had put in his deposition testimony in regard to the plain X rays that were taken preoperatively by . . . Zimmering in the testimony of . . . Pressman that was taken in that deposition testimony it was not qualified, he was qualified and stated to be an expert as a board certified diagnostic radiologist who in fact has a further certificate in regard to neuroradiology.

"And the court has ruled that he has not, it has not been established that the opinions he gave in regard to the reading of spina bifida on the preoperative X rays were and as to the standard of care in regard to that, putting in plain language it was his opinion that it should have been seen, that the spina bifida was there.

"It was not laid as a foundation and a qualification whether he was indicating that it should have been seen by someone such as himself. He, in fact, colloquially referred to as 'we' at one point in his testimony as a board certified diagnostic radiologist, which is not the standard that . . . Zimmering, in fact, is held to under § 52-184c (b) because . . . Zimmering is a board certi-

fied orthopedist surgeon and in all of his other work for instance, the surgery, he is held to the standard of a board certified orthopedic surgeon but in his work reading as a radiologist, the court finds under subsection (b) he is held to a lesser standard and that is basically of a similar health care provider which in this instance would be a, for lack of a better way to put it, plain old radiologist to distinguish from a board certified diagnostic radiologist and there is no foundation laid that that opinion offered by . . . Pressman regarding to the reading of those plain X rays, the AP X rays, was the standard of care for a quote, unquote, 'plain old radiologist' to be distinguished from what he was testifying as and that is he is a board certified diagnostic radiologist."

We cannot conclude from these remarks that the true basis of the trial court's ruling was, as the plaintiff urges, subsection (b) (2), rather than subsection (d) (2) of § 52-184c. First, when the trial court initially made the ruling four days prior, it specifically relied on subsection (d) (2) of § 52-184c, as its quotation from that subsection indicated. We are not inclined to conclude that the trial court, in attempting to explain its ruling further, intended to shift the basis for that ruling. Second, any reference to subsection (b) of § 52-184c by the trial court was obviously due to inadvertent error, because subsection (b), as previously discussed, involves cases, unlike the present case, in which the defendant health care provider is neither board certified nor a specialist.[8] Third, to the extent that the trial court may have referred to subsection (b) of § 52-184c in these remarks, that erroneous reference would only create an ambiguity in the record as to the basis of the ruling, and we ordinarily read an ambiguous trial court

[8] A more likely explanation is that the trial court, in these remarks, actually referred to subsection *(d)* of § 52-184c, but that the court reporter misheard the (d) for a (b).

record to support, not to undermine, its judgment. *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 9, 826 A.2d 1088 (2003).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.