MICHAEL FEINBERG *v.* JOANNE FEINBERG
(AC 26999)

Flynn, C. J., and Bishop and Pellegrino, Js.

---

Argued February 4—officially released May 26, 2009

*Steven D. Ecker*, for the appellant (defendant).

*Michael S. Feinberg*, pro se, the appellee (plaintiff).

*Robert D. Zaslow*, guardian ad litem for the minor child.

*Opinion*

BISHOP, J. The defendant, Joanne Feinberg, appeals from the postdissolution order of the trial court granting the plaintiff, Michael Feinberg, physical custody of the parties' minor child. On appeal, the defendant claims that the court improperly relied on outdated evidence and factually unsupported findings to determine that the best interest of the child would be served by primarily residing with the plaintiff and attending Simsbury public schools. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties were married on July 25, 1992, and have one minor son, Steven, born on November 3, 1996. On November 20, 1998, the marriage

was dissolved, and the parties entered into a stipulated agreement for judgment, which was incorporated by reference into the dissolution judgment. Pursuant to the stipulation, the parties were awarded joint legal custody; Steven was to live primarily with the defendant in Canton and stay with the plaintiff two days per week. The parties' parenting plan called for Steven to alternate weekends with his parents.

Beginning in April, 1999, the parties were involved in a series of visitation and custody disputes. On August 8, 2002, they entered into a stipulation that revised the parenting plan, establishing a system of joint decision making regarding Steven's health, education and upbringing, and increasing the amount of days for Steven to spend with the plaintiff. Pursuant to the stipulation, the child's primary residence remained with the defendant.

By motion filed June 25, 2004, the plaintiff sought to modify the custodial and support arrangements, claiming, inter alia, that the defendant had failed to comply with the 2002 stipulation by refusing to communicate with the plaintiff regarding parenting issues, excluding the plaintiff from school conferences and hindering the child's education by repeatedly bringing him to school late. The motion further stated that Steven should be enrolled in the Simsbury public school system and moved to the plaintiff's home, where he would enjoy a stable and nurturing home environment with the plaintiff, his wife and two stepdaughters.

Commencing on February 3, 2005, the court, *Hon. John R. Caruso*, judge trial referee, held hearings on the motion, during which the parties and the guardian ad litem, Robert D. Zaslow, submitted proposed orders. On August 25, 2005, in light of the approaching commencement of the school year, the court issued an interim order changing the child's primary residence,

for school residency purposes, from Canton to Simsbury, and on September 2, 2005, the court issued its memorandum of decision, which included orders regarding custody and support. In its memorandum, while noting that "[t]here is little doubt that the parties love their son and he loves them," the court made the observation that the inability of the parties to properly coparent had a negative effect on the child and that until the plaintiff filed a motion to modify, the defendant had failed in a number of respects in her parenting responsibility. The court noted that until the 2004-2005 school year, Steven was late to school and other appointments a number of times as a result of the defendant's failure to ensure his being on time. The court concluded that above all, Steven needed "to be in an environment that is conducive to his development as a well adjusted child." The court found that the change to the Simsbury public school system would be in Steven's best interest because he would enjoy a more stable home environment and live closer to his maternal grandmother. In framing its orders, the court adopted Zaslow's proposals, which included the following modifications: (1) the plaintiff was granted final decision-making authority for educational decisions, (2) the primary residence of the child, for school residency purposes, was changed to the plaintiff's home in Simsbury, (3) the defendant was to have the child on Mondays and Tuesdays, and the plaintiff was to have the child on Wednesdays and Thursdays, with the parties to alternate weekends, and (4) the child's extracurricular activities were to take place in Simsbury.

On September 13, 2005, the defendant filed two motions to reargue, requesting that the court reverse its decision to change the primary residence of the child for school residency purposes and arguing that the modification was made without any demonstrated educational need on the part of the child. Following

the court's denial of these motions, the defendant, on February 21, 2006, filed a motion for articulation of the court's orders regarding custody and support. The motion was denied. On review, this court did not order an articulation of the court's order regarding custody. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court improperly relied on outdated evidence and factually unsupported findings to determine the best interest of the child. Specifically, the defendant argues that the court's determination of the child's best interest was factually unsupported because (1) the court's determination that the child's tardiness was an issue was based on stale evidence at the time of trial, (2) no evidence was offered to support the court's finding that the defendant's home was no longer conducive to the child's development as a well adjusted child, (3) no evidence was offered to support the court's finding that the change to the Simsbury public school system would be in the child's best interest and (4) no evidence was offered to support the court's finding that the child would enjoy a more stable home environment with the plaintiff. Although we agree that the court appears to have relied, to some extent, on outdated information, we cannot say that the record on which the court made its decision was devoid of current information relating to the child's best interest.

We review this claim under the prevailing law on custody modification. "The authority to render orders of custody and visitation is found in General Statutes [Rev. to 2003] § 46b-56, which provides in part: (a) In any controversy before the superior court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding . . . custody and visitation . . . . (b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests

of the child . . . . Before a court may modify a custody order, it must find that there has been a material change in circumstance since the prior order of the court, but the ultimate test is the best interests of the child." (Internal quotation marks omitted.) *Payton* v. *Payton*, 103 Conn. App. 825, 833, 930 A.2d 802, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). "[T]he best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [the child's] environment." (Internal quotation marks omitted.) *In re Ryan R.*, 102 Conn. App. 608, 625–26, 926 A.2d 690, cert. denied, 284 Conn. 923, 924, 933 A.2d 724 (2007).

"The sole question is whether the trial court abused its discretion in deciding that the best interests of the child would be served by [the modification]. The trial court [has] the advantage of observing the witnesses and the parties. Considerable evidence [normally is] presented concerning the activities of the parties since [the rendering of the original judgment]. In circumstances like these, whether the best interests of the [child] dictate a change of custody is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Payton* v. *Payton*, supra, 103 Conn. App. 834.

"When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision . . . are clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the

record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *In re Anthony E.*, 96 Conn. App. 414, 418, 900 A.2d 594, cert. denied, 280 Conn. 914, 908 A.2d 535 (2006).

The following additional facts are necessary for our disposition of the defendant's claim. The child's school progress reports show that during the time that Steven was in the defendant's primary custody, he was tardy twice and absent once during the 2002-2003 school year, tardy eighteen times and absent twice during the 2003-2004 school year and tardy once and absent three times during the 2004-2005 school year. Testimony also was offered to show that the defendant habitually had been late picking Steven up from day care and extracurricular events and that the defendant routinely had been late to coparent counseling sessions, causing the counselor to end the sessions. The record contains evidence, as well, that the defendant suffered from an illness during the child's 2003-2004 school year, which required multiple surgeries and extensive recovery time, making it difficult for her to get the child to school on time during that year but that she had since recovered before the hearings on the motion to modify.

At trial, Zaslow proposed that Steven primarily reside with the plaintiff and attend Simsbury schools: (1) to eliminate the tardiness issue, (2) to put the child in close proximity to his maternal grandmother, who cared for the child when the defendant was unavailable, (3) to reduce the amount of time that the child spent in transit and (4) to streamline the contact between the child's combative parents. Zaslow noted that Simsbury schools could offer Steven a superior educational experience and more after school activities, including a two hour after school program that would better serve him than

his current day care. Zaslow further noted that the plaintiff's house and the maternal grandmother's house were in close proximity to the Simsbury school. Zaslow's proposed orders, which were premised on joint parenting, were careful to provide a fifty-fifty split of the child's time between his parents, as opposed to the previous sixty-forty split with the majority of the time going to the defendant.

Although we share the defendant's concern that the court appears to have relied, in part, on outdated information in formulating its orders, particularly the child's tardiness from school during the 2003-2004 school year, our review of the record reveals that the court did not abuse its discretion in determining that the best interest of the child would be served by changing his primary residence and school. We conclude that there was adequate current information in the record to support the court's determination. Although we acknowledge that the court put significant weight on the child's tardiness during the 2003-2004 school year, we recognize, as well, that "[a] party's prior conduct . . . may have a direct bearing on his or her present fitness to be a custodial parent. In the exercise of its awesome responsibility to find the most [salutary] custodial arrangement for the children of divorce, the court must . . . take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being. . . . At the same time, however, the focus of the court's inquiry must be designed to meet the primary objective which is to determine the present parenting ability of the parties." (Citation omitted; internal quotation marks omitted.) *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 304, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). On the basis of the foregoing, and mindful that we do not

sit in substitute judgment over the facts, we conclude that it was not improper for the court to consider the defendant's past history of tardiness as a factor in reaching its conclusion regarding the child's best interest.

It is axiomatic that we are bound by the findings made by a court in the proper exercise of its broad discretion regarding the determination of a child's best interest in custody modification cases. Because adequate evidence was presented that a change of primary residency would then provide the child with a more stable environment, we conclude that the court did not abuse its discretion in making its orders. Accordingly, on the basis of the record before us, we conclude that there was evidence to support the court's finding that the child's best interest would be served by residing in Simsbury and attending Simsbury public schools when the court issued its orders in 2005, and that the court, therefore, did not abuse its discretion in rendering its decision.[1]

The judgment is affirmed.

In this opinion PELLEGRINO, J., concurred.

FLYNN, C. J., dissenting. I respectfully dissent from the majority opinion. I agree with the defendant, Joanne Feinberg, that her then current parenting abilities were the proper measure of whether she should continue to have physical custody of her son in Canton. *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 303–304, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). In custody decisions, the trial court is bound to consider the child's

[1] We note the irony that in a case in which the appellant has alleged that the trial court based its orders on outdated information, this appeal comes to be heard more than three and one-half years later, a significant passage of time in this child's life. No disinterested reader should find in this opinion any suggestion of what custodial arrangement might, now, be in the child's best interest.

present best interests and not what would have been in the child's best interests at some previous time. *Blake* v. *Blake*, 207 Conn. 217, 224, 541 A.2d 1201 (1988), citing *In re Juvenile Appeal* (*Anonymous*), 177 Conn. 648, 664, 420 A.2d 875 (1979). Although in determining what is in the child's best interests the court may take into account a parent's past behavior, and here did so, the court in this case improperly failed to focus on the defendant's then present situation and present parenting abilities and how these affected the child's current best interests.

The present controversy between the parties over the physical custody of their minor son began with the plaintiff Michael Feinberg's postjudgment motion for modification of custody filed June 25, 2004. The plaintiff claimed that the defendant had failed to comply with the parties' August 8, 2002 stipulated parenting plan in nineteen separate ways, including allowing unexcused tardiness in the son's school attendance in the Canton public schools. The court held hearings on the plaintiff's motion and on the defendant's subsequent motion to modify custody and child support beginning on February 3, 2005, and concluding on May 9, 2005. On August 25, 2005, almost four months later, the court issued a brief order stating that the child's residence and schooling would be switched to Simsbury, with the plaintiff.

On September 2, 2005, the court issued a memorandum of decision in which it observed that the parties' complete inability to agree negatively affected the child. The court further stated: "Until the plaintiff filed [his motion to modify custody and support], the defendant failed in a number of respects in her parenting responsibility. Until this academic year, Steven was late to school and other appointments a number of times as a result of the defendant's failure to ensure his being on time. Above all else, Steven needs to be in an environment that is conducive to his development as a well

adjusted child. The court finds that the change to the Simsbury school system would be in the child's best interest. He will enjoy a more stable home environment and be close to his grandmother." The defendant's motion to reargue was denied by the court on September 15, 2005.

The defendant filed a motion for articulation on February 21, 2006, asking that the court specify how she had failed in her parental responsibilities. The defendant sought an articulation of "the actual factual findings underlying the [c]ourt's statement about [the defendant's] alleged failing(s) as a parent; what adverse consequences if any were caused to the minor child which need rectification; and what is the basis for the [c]ourt's evident belief that the situation will be improved by transferring the child to the Simsbury school system?" The request for articulation was not answered until almost fifteen months later, after this court, on May 10, 2007, ordered the court to do so pursuant to Practice Book § 66-7. Our order directed the court to articulate only "what it meant by its September 2, 2005 order that the defendant shall pay to the plaintiff child support in accordance with the Connecticut child support guidelines." Thereafter, appellate briefing of the case continued and oral argument was heard in this court on February 4, 2009.

I agree with the defendant that the evidence demonstrated that the child's tardiness at school due to the defendant's illnesses had occurred in the prior school year and had been ameliorated in the then current school year by the time of the court's hearings. During the school year in which the court's hearings were held, the child was absent only once and tardy but two times. The record does not appear to include any evidence of other missed appointments. It was the defendant's *present* parenting ability that was at issue. See *O'Neill* v. *O'Neill,* supra, 13 Conn. App. 303–304 (court improperly

relied on thirteen month old family relations custody report rather than evidence of party's current caretaking abilities in determining custody of child).

A finding of the court that a custodial parent has failed in her parenting responsibility which focuses improperly on past school attendance rather than the child's current good attendance in determining the present best interest of the child leaves the parent subject to a stigma that is not warranted by the law or the record in this case. The defendant should be able to vindicate her rights on appeal.

I would hold that the court's reliance on outdated information regarding the child's school attendance was improper and that its finding about other missed appointments was unsupported and, therefore, clearly erroneous. I would reverse the decision and remand the case for a new hearing at which the present parenting abilities of each parent would be the focus. Because of the law's delay and the years that have passed in which the child has been schooled in Simsbury, I would adopt the suggestion of the defendant and maintain the present custody and schooling order pending the outcome of the new hearing, rather than reverting to the status quo ante.