MARLENE BALASKA *v.* RICHARD BALASKA
(AC 32241)

Robinson, Bear and Borden, Js.

Argued April 25—officially released August 2, 2011

*William H. Cashman*, with whom was *Maria Chiarelli*, for the appellant (plaintiff).

*Richard Balaska*, pro se, the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiff, Marlene Balaska, appeals from the postdissolution order of the trial court modifying the visitation of the defendant, Richard Balaska, with respect to their minor child, C. On appeal, the plaintiff claims that the court: (1) abused its discretion by modifying the visitation order without finding a substantial change in circumstances or finding that modification was in the best interests of the child, and without considering the defendant's present ability to parent; (2) improperly ordered the parties to attend parental counseling; (3) erroneously found that she had engaged in parental alienation; and (4) improperly referred to treatises and articles that were not exhibits at trial.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The parties were married on May 29, 1994. They have two minor children of the marriage: a son, C, born in 1994; and a daughter, A, born in 1997. In May, 2006, the plaintiff filed a complaint seeking the dissolution of her marriage to the defendant on the ground of irretrievable breakdown. On November 5, 2007, the court rendered judgment dissolving the parties' marriage. The judgment incorporated by reference the terms of a separation agreement that the parties had entered into on the

---

[1] In her appellate brief, the plaintiff also claimed that the court abused its discretion by ordering her to pay the fees for the court-appointed attorney for the minor child. At oral argument before this court, however, the plaintiff waived this claim.

same date. The agreement provided in relevant part that the parties were to have joint legal custody of C and A, with the plaintiff having primary physical custody. During the school year, the defendant had visitation with the children once a week after school until 7:30 p.m., and one additional midweek evening per month from 5 p.m. to 8 p.m. During the summer, he had visitation twice a week from 4 p.m. to 8 p.m. In addition, the defendant had visitation on alternating weekend days and holidays. The agreement did not provide the defendant with any overnight parental access.

The record reflects that the parties subsequently engaged in classic, high conflict postdissolution litigation regarding family matters. See *Strobel* v. *Strobel*, 73 Conn. App. 428, 808 A.2d 698, appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003). In this context, both parties filed, inter alia, motions seeking to modify custody and visitation with respect to both children. The defendant sought sole physical and legal custody of C, along with increased visitation. The plaintiff, in response, moved for sole legal custody of both C and A, along with more restricted visitation for the defendant.

Following a fourteen day hearing, the court issued its order increasing the defendant's visitation rights with C but suspending entirely his visitation with A.[2] The defendant's increased visitation time with C included overnight visitation.[3] In addition, the court ordered that the plaintiff and the defendant engage in the coparenting program "Focus on Kids" at a minimum of once per month "to discuss [their children's] behavioral issues,

---

[2] The court ordered that both parties were to continue to have joint legal custody of C and A.

[3] The defendant's parental access was set forth as follows: "Alternating weekends from Friday after school/camp until return to school or camp Monday morning. . . . Every Wednesday after school/camp until return to school/camp Thursday morning. . . ." Additionally, the defendant was entitled to two nonconsecutive weeks of summer vacation with C.

educational issues, medical issues and planning for their children's futures." The court found that the plaintiff's and the defendant's participation in parental counseling was in the best interests of both children. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly increased the defendant's visitation with C without finding a substantial change in circumstances or that modification was in the child's best interests, and without considering the defendant's present ability to parent. We disagree.

We begin by setting forth the standard of review and legal principles that guide our analysis. "Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion." (Internal quotation marks omitted.) *Emrich* v. *Emrich*, 127 Conn. App. 691, 694, 15 A.3d 1104 (2011). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 366, 999 A.2d 721 (2010).

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the

record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 117 Conn. App. 304, 317–18, 978 A.2d 1141 (2009).

A

"General Statutes § 46b-56 (a)[4] provides the court [with] broad authority to make or modify any proper order regarding the custody, care, education, visitation and support of minor children in dissolution actions." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 119 Conn. App. 194, 202, 986 A.2d 1119, cert. granted on other grounds, 295 Conn. 916, 990 A.2d 868 (2010). The plaintiff argues that the court abused its discretion by modifying the defendant's visitation with C because the defendant failed to introduce any evidence demonstrating a substantial change in circumstances. This premise, however, reflects a misunderstanding of the applicable law.

In ruling on a motion to modify visitation, the court is not required to find as a threshold matter that a change in circumstances has occurred.[5] *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 433, 759 A.2d 1050 (2000); see also *McGinty* v. *McGinty*, 66 Conn. App. 35, 40, 783 A.2d 1170 (2001). Instead, "[i]n modifying an order concerning visitation, the trial court shall 'be

---

[4] General Statutes § 46b-56 (a) provides in relevant part: "In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children . . . ."

[5] Although not at issue in this appeal, we note that "[o]ur Supreme Court has limited the trial court's broad discretion to modify *custody*, requiring that a modification order be based on either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child." (Emphasis added; internal quotation marks omitted.) *Malave* v. *Ortiz*, 114 Conn. App. 414, 416, 970 A.2d 743 (2009).

guided by the best interests of the child . . . .' General Statutes § 46b-56 (b)."[6] *Kelly* v. *Kelly*, 54 Conn. App. 50, 57, 732 A.2d 808 (1999); see *Szczerkowski* v. *Karmelowicz*, supra, 432 ("[w]hen a court rules on a motion to modify visitation, it is statutorily incumbent on the court that its order be guided by the best interest of the child standard"). Accordingly, the court's alleged failure to find a substantial change in circumstances did not render its order modifying visitation improper.

The plaintiff also contends that the court increased the defendant's visitation with C absent a finding that modification was in the best interests of the child. We conclude, however, that her contention is at odds with the underlying record and the court's oral memorandum of decision.

Following final argument, the court assured the parties that, in carrying out its statutory duties pursuant to § 46b-56, all of its orders would be entered according to the best interests of the children. Subsequently, on the basis of extensive evidence presented at the underlying hearings, the court found that the defendant and C had "a positive relationship and that [visitation] time should be expanded." In making this determination, the court specifically credited the testimony of the defendant that he and C had spent meaningful time together, enjoying a wide variety of activities, and found that the two had "a close and bonded relationship."

In addition, the court found that the testimony of Michael Perzin, the guardian ad litem, corroborated the defendant's testimony. Perzin testified that when he visited with C at the defendant's home, C seemed to

---

[6] General Statutes § 46b-56 (b) provides in relevant part: "In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ."

be "very happy, relaxed . . . [and] having a really good time." Following that visit, Perzin indicated in his notes that there was "no apparent reason why [C] shouldn't have expanded [visitation] time [with the defendant] . . . ." Moreover, Perzin testified during the proceedings that, in his opinion, the defendant should have been permitted increased visitation, including overnight weekend visits and an overnight weeknight stay. As this court has noted, "[i]t is well established that the role of the guardian ad litem is to speak on behalf of the best interest of the child." *In re Tayquon H.*, 76 Conn. App. 693, 704, 821 A.2d 796 (2003). In light of the foregoing, we conclude that the court, in modifying its visitation orders, was properly guided by the best interests of the child standard.

B

The plaintiff also claims that the court improperly modified the visitation order without considering the defendant's present ability to parent. The plaintiff contends, in essence, that because the defendant did not introduce evidence regarding his present ability to parent, the court abused its discretion by speculating as to the defendant's parenting abilities. We are not persuaded.

In support of her claim, the plaintiff cites to two decisions from this court, namely, *Feinberg* v. *Feinberg*, 114 Conn. App. 589, 970 A.2d 776, cert. granted, 293 Conn. 901, 975 A.2d 1277 (2009), and *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), for the proposition that a trial court's decision to modify a particular parent's visitation must be supported by sufficient evidence regarding that parent's present parenting ability. Our review of those two cases, however, reveals that the plaintiff's reasoning is flawed for two reasons.

First, in both *Feinberg* and *O'Neill*, this court was reviewing judgments from the trial court that involved custody orders, rather than visitation. See *Feinberg* v. *Feinberg*, supra, 114 Conn. App. 590; *O'Neill* v. *O'Neill*, supra, 13 Conn. App. 301. As noted in part I A of this opinion, our Supreme Court has limited the trial court's broad statutory authority to modify custody orders; see footnote 5 of this opinion; but has not applied the same limitation with respect to visitation orders.

More importantly, the gravamen of those two decisions, as related to the present case, is that a court's reliance on outdated information and past parental conduct in making or modifying orders concerning parental access may be improper, particularly if the record has adequate current information demonstrating a present ability to parent. See *Feinberg* v. *Feinberg*, supra, 114 Conn. App. 596 (although court relied, in part, on outdated information, no abuse of discretion where there was adequate current information in record to support orders); *O'Neill* v. *O'Neill*, supra, 13 Conn. App. 303–304 (court abused discretion by fashioning order based on past conduct and outdated evidence rather than present ability to parent). Our review of the record and of the court's oral memorandum of decision reveals that the court did not favor outdated evidence related to past parental behavior in fashioning its modification order. To the contrary, the court's order was issued on the basis of the "positive and loving relationship" the defendant and C enjoyed. Moreover, the court, in issuing its modification order, did not rely on past parental conduct that the plaintiff claimed was inappropriate, such as the defendant's playing adolescent games with C that involved the touching of one another's buttocks. Finally, to the extent that there is any ambiguity in the court's oral memorandum of decision with respect to the defendant's present parenting ability, we read such ambiguity in this regard to support, rather than to undermine, the

judgment. See *Kiniry* v. *Kiniry*, 299 Conn. 308, 333, 9 A.3d 708 (2010); *Friedman* v. *Meriden Orthopaedic Group, P.C.*, 272 Conn. 57, 71–72, 861 A.2d 500 (2004).

## II

We next consider the plaintiff's claim that the court improperly ordered both parties to attend parental counseling without affording the plaintiff an evidentiary hearing. We decline to review this claim.

On appeal, the plaintiff contends that her federal and state constitutional due process rights were violated because the court, sua sponte, ordered the plaintiff and the defendant to participate in parental counseling without holding an evidentiary hearing to determine which specific therapist should be chosen and who should pay for the sessions. Although we recognize that, in ordering family counseling, the court should afford the parties an opportunity to introduce evidence in connection with any objections they may raise as to being treated by a particular therapist or how the services should be paid for; see *Kelly* v. *Kelly*, supra, 54 Conn. App. 58; our review of the record reveals that the plaintiff did not raise in the trial court any challenges to the court's ordering the parties to participate in counseling. But cf. id., 53 (appellant filed motion asking trial court to articulate reason for ordering family counseling without evidentiary hearing). Moreover, the plaintiff does not acknowledge the fact that she raises her due process claims for the first time on appeal, nor does she seek appellate review of her claims pursuant to the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"It is well established that generally this court will not review claims that were not properly preserved in the trial court." (Internal quotation marks omitted.) *State* v. *Bourguignon*, 82 Conn. App. 798, 801, 847 A.2d 1031 (2004). It is equally well established that, in order

to prevail on an unpreserved constitutional claim, appellants must affirmatively request *Golding* review "and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims." *In re Melody L.*, 290 Conn. 131, 154, 962 A.2d 81 (2009). "Merely raising and analyzing a claim of constitutional magnitude . . . does not constitute an affirmative request for *Golding* review." *Travelers Property Casualty Co. of America* v. *Twine*, 120 Conn. App. 823, 829, 993 A.2d 470 (2010). In light of the defendant's failure to request review pursuant to *Golding* or to present an analysis consistent with the principles codified in *Golding; see State* v. *Elson*, 125 Conn. App. 328, 353–54, 9 A.3d 731 (2010) (en banc), cert. granted, 300 Conn. 904, 12 A.3d 572 (2011); we decline to review this claim. See *State* v. *Beaulieu*, 118 Conn. App. 1, 7, 982 A.2d 245 (in absence of briefing *Golding* analysis adequately, this court will not address unpreserved claims raised by appellant), cert. denied, 294 Conn. 921, 984 A.2d 68 (2009).

### III

Finally, the plaintiff claims that the court's modification of the defendant's visitation as to C was improper because: (1) the court erroneously found that she engaged in parental alienation with respect to A, and (2) in making that finding the court improperly referenced treatises and articles that were not exhibits at trial. We are not persuaded.

The following additional facts are relevant to our resolution of this claim. In addition to modifying the defendant's visitation with C, the court ordered that the defendant's visitation with A would be suspended entirely. In reaching that decision, the court discussed the high conflict nature of the parties' marital dissolution and how that conflict may have impacted the relationship between the defendant and A. The court also

indicated that it had performed "significant research" on the topic of parental alienation syndrome,[7] particularly by reviewing several treatises and articles devoted to alienation. After summarizing that research, the court noted that this case presented facts consistent with alienation. In this connection, the court stated that the plaintiff's "disdain, dislike [and] hatred of [the defendant] was obvious to the court during her testimony," and that her "virtually radioactive" hatred toward the defendant had "poisoned" A. Moreover, the court found that, consistent with parental alienation, the plaintiff's feelings of hatred for the defendant had been transmitted to A.

On appeal, the plaintiff concedes that she is not challenging any of the court's orders with respect to A.[8] She contends, instead, that the court's finding her culpable for A's alienation of the defendant "inherently affected the [court's] orders relative to [C]." In support of this contention, the plaintiff directs our attention to a casual statement by the court made during the proceedings that the best interests of the children were intertwined.[9] Our review of the record, however, reveals that this statement was not related to the court's finding of parental alienation concerning A or its orders relative

[7] Parental alienation syndrome "occurs when one parent campaigns successfully to manipulate his or her children to despise the other parent despite the absence of legitimate reasons for the children to harbor such animosity." I. Turkat, "Parental Alienation Syndrome: A Review of Critical Issues," 18 J. Am. Acad. Matrimonial L. 131, 133 (2002–2003).

[8] In the conclusion section of his appellate brief, the defendant requests that this court reverse the court's order suspending his visitation with A. Because the defendant failed to file a cross appeal from that order; see Practice Book § 61-8; we decline to address this issue. See, e.g., *Przekopski v. Przekop*, 124 Conn. App. 238, 240 n.2, 4 A.3d 844 (2010).

[9] Specifically, in responding to a request that the attorney for the minor child, who was appointed to represent A, also be able to ask questions concerning C, the court stated: "The best interests of both children are so intertwined that I believe the attorney for the minor child is able to adequately ask questions."

to C. Moreover, the court's oral memorandum of decision does not suggest even the slightest linkage between the rationale underlying its orders with respect to A and those concerning C. To the contrary, as we made clear in part I A of this opinion, the court's order increasing the defendant's visitation with C was issued on the basis of the meaningful and positive relationship that the defendant and C enjoyed. We therefore conclude that the court's parental alienation finding and its reference to treatises and articles regarding that finding were entirely disconnected from its orders modifying the defendant's visitation with C.

The judgment is affirmed.

In this opinion the other judges concurred.